432 So.2d 1323 (1983)
Thomas R. PLEDGER, Appellant,
v.
BURNUP & SIMS, INC., a Delaware Corporation, and Nick A. Carporella, Appellees.
No. 81-1555.
District Court of Appeal of Florida, Fourth District.
April 20, 1983.
Rehearing Denied July 8, 1983.
*1325 Wm. Snow Frates of Frates Jacobs Farrar Novey & Blanton, Miami, and James B. Tilghman, Jr., and Robert Galt, III, of Floyd, Pearson, Stewart Richman, Greer & Weil, P.A., Miami, for appellant.
Malcolm H. Fromberg of Fromberg, Fromberg & Roth, P.A., Miami, and Joel D. Eaton and Joel S. Perwin of Podhurst, Orseck, Parks, Josefsberg, Eaton, Meadow & Olin, P.A., Miami, for appellees.
DELL, Judge.
Thomas R. Pledger, formerly President and Chairman of the Board of Burnup & Sims, Inc., filed a six count complaint in libel and slander against Burnup & Sims and Nick A. Caporella, its current president. Pledger appeals from summary judgment entered in favor of appellees on Counts I, II, IV, V and VI of his complaint.
This case arose out of a corporate takeover attempt. Burnup & Sims had filed suit in New York against one Victor Posner, alleging, inter alia, that Posner attempted to take over Burnup & Sims by inducing "plaintiff's [i.e., Burnup & Sims'] executive officer" to violate his fiduciary duty to the corporation. This complaint (New York complaint) specifically alleges that "plaintiff's executive officer" was so induced. Although not mentioned by name in the New York complaint, it clearly appears during the times alleged that Pledger served as the chief executive officer of Burnup & Sims.
Count I of the defamation complaint alleges that appellees prepared a writing labelled "complaint" (Draft I), which charges appellant with specific egregious conduct and with conspiracy to effect the Posner takeover. Appellees published Draft I by giving it to Posner's Florida attorney. Draft I, which appellees call a preliminary draft of the New York complaint, has never been filed in any court.
Count II charges appellees with defamations contained in a second draft complaint (Draft II), which appellees published by reading Draft II over the telephone to the presidents of fourteen subsidiary corporations.
The defamation alleged in Count IV rests on the inducement language contained in the New York complaint and published to Posner's New York attorneys before appellees filed the New York complaint.
Count V charges appellee Caporella, individually, with wrongfully inducing Burnup & Sims to include the defamatory matter about appellant in the New York complaint.
Count VI alleged a second publication of the New York complaint. Appellant asserts that the actual filing thereof in the Supreme Court of the State of New York constituted publication, which has since become actionable because that court dismissed the New York complaint.
None of these writings names appellant as a party defendant.
The trial court found all of the above statements absolutely privileged as publications preliminary to a proposed judicial proceeding and pertinent thereto, citing Ange v. State, 98 Fla. 538, 123 So. 916 (1929) and Restatement (Second) of Torts § 587 (1977). Additionally, the trial court found that the holding of Kent v. Connecticut Bank and Trust Co., 386 So.2d 902 (Fla. 2d DCA 1980), did not operate to nullify the defense of absolute judicial privilege with respect to Count VI, and that the one-year New York Statute of Limitations, CPLR Section 215, and Section 95.10, Florida Statutes (1981) barred Counts IV and VI.
Counts I, II and IV allege publications which occurred before a judicial proceeding, rather than in the course of a judicial proceeding. This appeal presents the question of whether a privilege attaches to publications made prior to litigation. In Ange v. State, 123 So. at 917, our Supreme Court held:
The doctrine is well settled that defamatory words when used by parties, counsel, or witnesses in the due course of judicial procedure, and when relevant to the matter in hand, and pertinent to the subject *1326 of inquiry, are privileged and cannot be made the basis of a proceeding for libel or defamation, no matter how false or malicious such statements may in fact be. Myers v. Hodges, 53 Fla. 197, 44 So. 357. This rule of privilege as applied to statements made in the course of judicial proceedings is not restricted to trials of actions, but includes proceedings before a competent court or magistrate in the due course of law or administration of justice which is to result in any determination or action by such court or officer. This privilege extends to the protection of the judge, parties, counsel, and witnesses, and arises immediately upon the doing of any act required or permitted by law in the due course of the judicial proceeding or as necessarily preliminary thereto. [Emphasis added.]
There are many examples of publications which are necessarily preliminary to a judicial proceeding which include, but are not limited to, actions brought under the Florida Tort Claims Act,[1] landlord-tenant actions,[2] certain agricultural claims,[3] various actions brought under the Uniform Commercial Code,[4] insurance claims and other contract actions where the parties have agreed to a notice requirement as a condition precedent to suit. The absolute privilege afforded to necessarily preliminary publications is not without limitation, as the court in Myers v. Hodges so carefully pointed out:
In coming to this conclusion, we are not unmindful of the weighty reasons advanced in favor of the English doctrine of absolute privilege for defamatory words published in the course of judicial proceedings; that it is to the interest of the public that great freedom should be allowed in complaints and allegations with a view to have them inquired into; and that parties and counsel should be indulged with great latitude in the freedom of speech in the conduct of their causes and courts and in asserting their rights, because in this way the purposes of justice will be subserved, and the court can and will protect the party aggrieved by expunging irrelevant, defamatory matter from the pleadings, and by punishing for contempt of court the guilty party. We think the ends of justice will be effectively accomplished by not extending the privilege so far as to make it an absolute exemption from liability for defamatory words wholly and entirely outside of, and having no connection with, the matter of inquiry. For why should a person be absolutely privileged to defame another in the course of a judicial proceeding by making slanderous statements wholly outside of the inquiry before the court? We think it is unnecessary to carry the doctrine so far.
53 Fla. 197, 44 So. 357, 361 (1907).
The Supreme Court held statements made to the insurance commissioner to be absolutely privileged in Robertson v. Industrial Insurance Company, 75 So.2d 198 (Fla. 1954), because the statements were necessary to institute license revocation proceedings. However, our sister court, in Ridge v. Rademacher, 402 So.2d 1312 (Fla. 3d DCA 1981), held an unsworn statement to a police officer about an alleged crime qualifiedly rather than absolutely privileged. In Merriman v. Lewis, 141 Fla. 832, 194 So. 349 (1940), the defendant included a libel in a sworn statement to an insurance company. This statement was the basis for a claim that defendant intended to enforce in court, if necessary, and the statement also constituted the preliminary proof of loss necessary to sustain an action against the insurer. The Supreme Court held this statement qualifiedly rather than absolutely privileged.
Here we must decide whether publications allegedly made as part of settlement negotiations prior to filing suit may constitute necessarily preliminary acts as contemplated by the court in Ange v. State. More *1327 particularly we must decide whether the publication alleged in Count I was necessarily preliminary to the New York judicial proceeding.
Appellees argue that the publication of Draft I to Posner's attorney constituted part of pre-litigation settlement efforts, therefore the trial court properly found this publication absolutely privileged. First, we note that the trial court did not find that the publication constituted part of pre-litigation settlement efforts. It entered summary judgment on the ground that this publication was preliminary to and pertinent to a proposed judicial proceeding subsequently commenced by filing of the New York complaint. Second, even if appellees have properly characterized this publication, pre-litigation settlement efforts cannot be considered necessarily preliminary to the institution of judicial proceedings unless required by statute, administrative regulation or contract. Nonetheless, the courts of Florida encourage pre-litigation settlement negotiations. It is in the interest of society to reach equitable and mutually satisfactory resolution of disputes without the necessity of suit, an expensive proposition in terms of time, money, and emotional resources. We hold that this policy reason is sufficiently enhanced, and the parties sufficiently protected, by the qualified privilege. Our reasoning is consistent with Coogler v. Rhodes, 38 Fla. 240, 21 So. 109 (1897), in which the Supreme Court first set forth the concept of qualified privilege:
"Where a person is so situated that it becomes right, in the interest of society, that he should tell to a third person certain facts, then, if he bona fide, without malice, does tell them, it is a privileged communication." Townsh.Sland. & L. (4th Ed.) § 209. This definition is considered more exact in leaving out the word "duty," because it is privileged in the interest of society for a man to bona fide and without malice say those things which no positive legal duty may make it obligatory upon him to say. Id. That the matter stated in accordance with the above definition with good motives, and upon reasons apparently good, should turn out to be untrue, will not render the publisher liable.
21 So. at 112.
In Axelrod v. Califano, 357 So.2d 1048 (Fla. 1st DCA 1978), the court outlined the criteria to raise a qualified privilege:
Thus expressed, the elements essential to the finding of a conditionally privileged publication are: (1) good faith; (2) an interest to be upheld; (3) a statement limited in its scope to this purpose; (4) a proper occasion; and (5) publication in a proper manner. Abraham v. Baldwin, supra; and Leonard v. Wilson, 150 Fla. 503, 8 So.2d 12 (1942). To be qualifiedly privileged the communications must be made by a person having a duty or interest in the subject matter, to another having a corresponding duty or interest.
Id. at 1050.
We hold that settlement negotiations conducted within the guidelines set forth in Axelrod v. Califano, and the cases cited therein, have the benefit of a qualified privilege. To overcome a qualified privilege, the injured party must prove express malice or malice in fact. The issue of malice is critical because in cases in which a qualified privilege exists, the essential element of malice may not be implied. Rather, in order to recover, the plaintiff must prove express malice or malice in fact:
In other words, the mere fact that a defamatory statement was made does not imply that the speaker was motivated by malice if the statement was made on a privileged occasion, and therefore malice will not be presumed as a matter of law, even though the statement charges the commission of a crime or is otherwise defamatory per se. Under such circumstances the claimant cannot rely on implied malice, but must prove that the speaker was in fact motivated by malice, which is termed "express malice" to distinguish it from "implied malice."
Lewis v. Evans, 406 So.2d 489, 492 (Fla. 2d DCA 1981).
Appellant's complaint alleged that appellees published these statements with *1328 express intent to injure appellant, with knowledge of their falsity, and a reckless disregard of the truth. The record demonstrates that several witnesses testified by deposition to facts relevant to appellee's motion for summary judgment. The witness Caporella testified that he told some unnamed person that the suit was a scare tactic to back Posner off. Ronald Rossman, one of the subsidiary presidents who participated in the conference call, testified that he received the impression that suit was to be filed only as a last resort. Appellant testified that one DeViney, who also participated in the conference call, told him that he did not think that "they" ever actually planned to file suit but only intended it as a scare tactic. Such testimony clearly creates a question of fact as to whether the publication of the complaint to Posner's attorney constituted a good faith attempt at pre-litigation settlement negotiations or whether the appellees published the complaint with the express intent to injure appellant.
[W]hen the evidence is conflicting as to the existence or non-existence of privilege there is a mixed question of law and fact, and the fact issue is to be determined by the jury. Hartley v. Hartley and Parker v. Copeland, 51 So.2d 789 (Fla. 1951). If the privilege is conditional or qualified, and there is sufficient evidence to indicate that the privilege may have been exceeded or abused, the issue of fact must be submitted to the jury.
Axelrod v. Califano, supra, at 1052.
We do not fault the able trial judge for overlooking these statements, in the midst of 1750 pages of record. Nonetheless, these statements constitute contradictory evidence on the question of good faith, which renders summary judgment inappropriate. We are further persuaded to the correctness of this determination by appellant's relative helplessness in the face of these serious accusations. Although an action in defamation will not lie in favor of a defendant for statements made in the course of a judicial proceeding, still a defendant, as a party to the proceeding, has a host of opportunities to defend his reputation. He receives notice of all proceedings; he may take discovery; he may appear represented by counsel, and present evidence in his own behalf to establish the falsity of any allegations. Redress by an action in malicious prosecution or abuse of process might also be available. Sub judice, appellees have effectively foreclosed these alternatives to appellant by virtue of the fact that their New York complaint did not name appellant as a party defendant. See, e.g., Atlantic Plaza Partnership v. Daytona Sands, Inc., 357 So.2d 761 (Fla. 1st DCA 1978). See also, Restatement (Second) of Torts § 682 (1977). Under these circumstances, the court should give appellant the widest possible latitude, in order not to deprive him of his constitutionally guaranteed access to courts. Art. I, § 21, Fla. Const. (1968).
Appellees raise an alternative ground to uphold the summary judgment in Count I. See Firestone v. Firestone, 263 So.2d 223 (Fla. 1972). They contend that no publication occurred because this communication was made to Posner's attorney. In Campbell v. Jacksonville Kennel Club, Inc., 66 So.2d 495 (Fla. 1953), a kennel club employee accused the plaintiff of stealing a winning ticket. The employee made the accusation in the presence of the person with whom plaintiff had joined in the purchase of the ticket. The court held that the utterance of a slander to the plaintiff in the presence of her co-venturer did not constitute publication. In Maine v. Allstate Insurance Co., 240 So.2d 857 (Fla. 4th DCA 1970), an attorney represented Maine in litigation with Allstate over a fire insurance claim. The attorney had requested copies of all subsequent correspondence between the parties concerning this claim. Pursuant to this request, Allstate sent Maine's attorney a copy of a rejection of claim on the grounds of arson and fraud. In the defamation litigation which followed, this Court held that no publication had occurred because the plaintiff chose the attorney as his agent for receipt of such papers, and further, because the attorney-client confidence would prevent further dissemination of the libel.
*1329 Appellees argue these cases together and suggest that publication to Posner's attorney cannot constitute publication of a libel about appellant. Appellees extend the holdings of these cases too far. Although the utterance of a slander in the presence of the plaintiff's co-venturer did not constitute publication, the trial judge in Campbell directed a verdict at the close of the plaintiff's case, because the plaintiff's own evidence proved all elements of the joint venture. Sub judice, the allegation of conspiracy is the very thing which appellant claims to be false.[5] Further, Posner's attorney cannot be considered Pledger's chosen agent for any purpose. Since no attorney-client relationship exists between appellant and Posner's attorney, that relationship cannot protect appellant from further dissemination of the libel, if such dissemination would in some way further Posner's interests. Thus, both reasons underlying the Maine decision are absent from this case.
The foregoing privilege analysis also applies to the cause of action alleged in Count II. We next consider the trial court's alternative ground for granting summary judgment as to Count II: that is, the trial court's finding that the presidents of the subsidiary corporations included in the conference call were part of the control group of Burnup & Sims, and therefore no publication occurred. As appellees phrase it, the statements of Count II amounted to nothing more than the corporation talking to itself.
The record demonstrates conflicting evidence on the status of the subsidiary presidents. For instance, in one deposition, appellee Caporella testified that he called the conference and included the subsidiary presidents to allay their fears and to obtain their input on the takeover attempt. He wanted their views as to management's decision to sue Posner and he wanted them to approve the filing of the suit allegedly because Burnup & Sims' attorneys suggested he do so. He further stated that he had recently been criticized for taking other action with reference to Mr. Pledger, and wanted everybody's input before management made the decision to sue. He asked the subsidiary presidents if they would be willing to serve on the board of directors of Burnup & Sims, and informed them that an affirmative response would constitute approval of the decision to sue. These examples are not exhaustive. They establish that a question of fact exists as to whether or not the fourteen subsidiary presidents exercised actual control over Burnup & Sims, and thus present a question of fact as to whether publication occurred.
The arguments and analysis of Count I apply to the cause of action alleged in Count IV. However, as an alternative ground for granting summary judgment, the trial court determined that New York's one-year statute of limitations barred the remedy sought in Count IV.
Prior to our Supreme Court's decision in Bishop v. Florida Specialty Paint Co., 389 So.2d 999 (Fla. 1980), Florida followed the lex loci delicti rule of conflicts law  the law of the place of the wrong governed the substantive rights and liabilities of the parties. Hopkins v. Lockheed Aircraft Corp., 201 So.2d 743 (Fla. 1967). However, the lex loci delicti doctrine governed only substantive rights and liabilities. Matters of procedure were governed by the law of the forum state, and the statute of limitations is a matter of procedure. Colhoun v. Greyhound Lines, Inc., 265 So.2d 18 (Fla. 1972); Brown v. Case, 80 Fla. 703, 86 So. 684 (1920); McElmoyle v. Cohen, 38 U.S. (13 Pet.) 312, 10 L.Ed. 177 (U.S. 1839). Florida law governing limitations of actions includes *1330 Section 95.10, Florida Statutes (1981):
When the cause of action arose in another state or territory of the United States, or in a foreign country, and its laws forbid the maintenance of the action because of lapse of time, no action shall be maintained in this state.
This would have presented no problem under lex loci delicti. Since the libel alleged in Count IV was published in New York, New York was the place of the wrong, and both its substantive law and its statute of limitations would have applied.
Recently, however, our Supreme Court receded from the lex loci delicti rule and affirmatively adopted the significant relationships test of the Restatement (Second) of Conflict of Laws §§ 145-46 (1971):
§ 145. The General Principle
(1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.
(2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
(a) the place where the injury occurred,
(b) the place where the conduct causing the injury occurred,
(c) the domicile, residence, nationality, place of incorporation and place of business of the parties and
(d) the place where the relationship, if any, between the parties is centered.
Bishop v. Florida Specialty Paint Co., supra at 1001.
Unquestionably, Florida has the most significant contacts with the issue presented by Count IV. Appellant has presented a question on which he has cited no authority, in Florida or elsewhere: that is, in view of the Supreme Court's adoption of Restatement (Second) of Conflict of Laws § 145, did the cause of action arise in New York, where publication occurred, or in Florida, which has the most significant relationship?
Although Bishop adopts a conflicts rule which governs choice of substantive law, and Section 95.10 is a procedural statute, nonetheless, appellant asserts that Florida substantive law, including its choice of law rule, governs the determination of where the cause of action arose. If the cause of action arose in Florida, then Section 95.10 does not apply, and appellant timely asserted his claim in Count IV.
To resolve this question, we must determine the purpose of statutes of limitations, including borrowing statutes. Brown v. Case, supra, quoted extensively from opinions of the United States Supreme Court on the intent and purpose of statutes of limitations, including the following:
Of late years, the courts, in England and in this country, have considered statutes of limitations more favorably than formerly. They rest upon sound policy, and tend to the peace and welfare of society. The courts do not now, unless compelled by the force of former decisions, give a strained construction to evade the effect of those statutes. By requiring those who complain of injuries to seek redress by action at law, within a reasonable time, a salutary vigilance is imposed, and an end is put to litigation.
Brown, supra, 86 So. at 685, quoting McCluny v. Silliman, 28 U.S. (3 Pet.) 270, 7 L.Ed. 676 (U.S. 1830).
The Brown court also stated, 86 So. at 685,
It is clear that the Legislature intended to give a debtor against whom a cause of action accrued in another state or territory, or in a foreign country, the benefit of statutes of limitations of those jurisdictions if they were shorter than that of this state.
The Legislature has not amended Section 95.10 since the Supreme Court opinion in Bishop. We have no hint of the legislative will on the question of determining where a cause of action arises. They may have assumed the Bishop conflicts rule would determine where a cause of action arises. *1331 They might equally have assumed that Bishop, a case dealing exclusively with the substantive rights and liabilities of the parties, had nothing to do with the procedural borrowing statute.
It is of considerable significance that although this statute has been on the books for almost a hundred years, since 1872, the appellate courts of Florida have been called upon to refer to it only three times... . We are convinced that the clarity of its language and the certainty of its command simply left no room for litigation.
Beasley v. Fairchild Hiller Corp., 401 F.2d 593, 595 (5th Cir.1968).
The language of Section 95.10 is as clear today as it was in 1968 or in 1872. We have no indication that the legislative intent has changed. The language of Restatement (Second) § 145, as adopted in Bishop, clearly refers to rights and liabilities, not to remedies. That is, Bishop determines which state's substantive law will apply, notwithstanding where the cause of action accrued. We decline to "give a strained construction to evade the effect" of the statute in the absence of a statement of legislative will or a ruling by our Supreme Court. We hold that the cause of action stated in Count IV of appellant's defamation complaint is barred by operation of Section 95.10, Florida Statutes (1981) and CPLR Section 215, the New York Statute of Limitations.
Since appellant presented no argument directed to Count V, we affirm summary judgment thereon.
The defamation alleged in Count VI appeared in appellees' New York complaint. The act of publication alleged is the filing of the complaint. This publication clearly falls within the holding of Ange v. State, supra, and is absolutely privileged. However, appellant contends that Kent v. Connecticut Bank and Trust Co., supra, operates to remove the absolute privilege from a complaint which has been dismissed for lack of jurisdiction. The trial court in Kent, however, had dismissed the complaint seeking to collect a past due credit card account for lack of subject matter jurisdiction. In the subsequent defamation litigation, the Second District Court of Appeal held that if the court in which a case is filed has no subject matter jurisdiction, the proceeding is not judicial in nature, thus, no absolute judicial privilege attaches to statements made therein. In the controversy before us, the New York Supreme Court dismissed for lack of personal jurisdiction over Posner. The fact that the named defendant successfully avoided service of process did not destroy the judicial nature of the proceedings in that court. The trial court correctly declined to apply Kent to Count VI of the defamation complaint and we affirm the summary judgment on this count.
Accordingly, we affirm the trial court's order granting summary judgment as to Counts IV, V and VI of appellant's complaint. We reverse as to Counts I and II of appellant's complaint and remand this case for further proceedings consistent with this opinion.
AFFIRMED IN PART, REVERSED IN PART and REMANDED.
HERSEY, J., concurs.
BERANEK, J., dissents with opinion.
BERANEK, Judge, dissenting.
I respectfully disagree with the majority as to the reversal of Counts I and II. I would hold that actual settlement negotiations with appropriate individuals prior to the filing of litigation are necessarily preliminary to such later-filed litigation. See: Sriberg v. Raymond, 544 F.2d 15 (1st Cir.1976) (Massachusetts law); Theiss v. Scherer, 396 F.2d 646 (6th Cir.1968) (Ohio law), Johnston v. Cartwright, 355 F.2d 32 (8th Cir.1966) (Iowa law); Parker v. Title and Trust Co., 233 F.2d 505 (9th Cir.) rehearing denied, 237 F.2d 423 (9th Cir.1956) (Oregon law); Chard v. Galton, 277 Or. 109, 559 P.2d 1280 (1977); Binder v. The Oregon Bank, 284 Or. 89, 585 P.2d 655 (1978); and Lerette v. Dean Witter Organization, Inc., 60 Cal. App.3d 573, 131 Cal. Rptr. 592 (1976).
The majority holds that an absence of good faith on the part of defendant is *1332 shown by the fact that the "suit was to be filed only as a last resort." I submit almost all suits are last resorts and that prospective plaintiffs should be privileged to attempt to settle before resorting to that last resort. I would affirm as to Counts I and II in addition to affirming on Counts IV, V, and VI.
NOTES
[1] § 768.28, Fla. Stat. (1981).
[2] Ch. 83, Fla. Stat. (1981).
[3] § 578.26, Fla. Stat. (1981).
[4] Ch. 672-680 et seq., Fla. Stat. (1981).
[5] We do not agree that Smith v. Anheuser-Busch Brewing Co., 346 So.2d 125 (Fla. 1st DCA 1977), holds that any allegation of conspiracy renders a plaintiff subject to the co-venturer rule. The Smith court stated at 126, "That communication was a demand for explanation concerning appellant's alleged joint actions," citing Campbell. However, like Campbell, the trial judge directed the verdict in Smith, on the grounds that the plaintiff's evidence did not support the allegations of the complaint. Whether the court held plaintiff's evidence insufficient because he had established a joint action, as was the situation in Campbell, does not appear from the opinion.