**LANCHILE AIRLINES, Plaintiff,**

v.

**CONNECTICUT GENERAL LIFE INSURANCE COMPANY OF NORTH AMERICA, Angel M. Molina and Santiago L. Rodriguez as trustees for S & M Insurance Consultants, Inc., Angel M. Molina, and Santiago L. Rodriguez, Defendants.**

No. 89–0500–CIV.

United States District Court,
S.D. Florida.

Jan. 25, 1990.

order to facilitate a speedy resolution of DEFENDANTS' Motions.

478

Steven J. Brodie, Cohen, Berke, Bernstein, Brodie & Kondell, P.A., Miami, Fla., for defendant Angel Molina.

R. Lawrence Bonner, Greer, Homer and Bonner, Miami, Fla., for defendant Connecticut General Life Ins. Co.

Jose M. Menendez, Spencer & Klein, Miami, Fla., for defendant Santiago L. Rodriguez.

Renier Cruz, Miami, Fla., Peter J. Petesch, Galland, Kharasch, Morse & Garfinkle, P.C., Washington, D.C., and Celestino Pena, Whitestone, N.Y., for plaintiff LanChile Airlines.

Angel M. Molina, Miami, Fla., pro se.

ORDER DENYING PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIMS; ORDER DENYING PLAINTIFF'S MOTION FOR RULE 11 SANCTIONS

JAMES LAWRENCE KING, Chief Judge.

Plaintiff LanChile Airlines has moved to dismiss defendants Rodriguez' and Molina's counterclaims and for sanctions in connection with the filing of those counterclaims.

Defendants Rodriguez and Molina filed counterclaims against plaintiff in which they alleged that plaintiff libeled and slandered defendants and tortiously interfered with defendants' business expectancies and relationships, and that defendants were damaged thereby. These accusations arose out of a conversation which LanChile's attorney had with the attorney for another airline—Aeroperu. In this conversation, plaintiff's attorney advised Aeroperu's attorney that defendants had overcharged LanChile and that he suspected that Aeroperu may have been similarly overcharged.

## I. MOTION TO DISMISS

Plaintiff moves to dismiss defendants' counterclaims because it contends that plaintiff's attorney's comments were absolutely privileged, and as such cannot form the basis of any action.

Before it can proceed to examine the privilege question posed by plaintiff, the court must determine which law governs questions of defamation and privilege in this case. Publication of the alleged tort took place in Washington, D.C. (two lawyers within the District communicated by phone)[1]. The court is cognizant of the general rule that "[i]n an action for defamation, the local law of the state where the publication occurs determines the rights and liabilities of the parties, ... unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied." Restatement (Second) of Conflict of Laws § 149 (1971). This motion poses a conflict of laws question.

Defendants' counterclaims rest on diversity jurisdiction, therefore the court must follow Florida conflict of laws rules to decipher what substantive law applies to

---

**1.** The tort may also have occurred elsewhere—through mail directed to Aeroperu, or other communications between LanChile's attorney and Aeroperu. Transactions other than the one attorney to attorney contact, however, do not appear in the record and the court cannot speculate beyond the given conduct alleged or shown by the documents submitted.

these defamation and privilege questions. *See Hoover v. Van Stone,* 540 F.Supp. 1118 (D.Del.1982). For tort law, Florida has adopted the "significant relationships test," of the Restatement (Second) of Conflict of Laws §§ 145–46 (1971). *Bishop v. Florida Specialty Paint Co.,* 389 So.2d 999 (Fla. 1980). That choice of law principle calls upon the court to determine controversies in accord with the law of the jurisdiction with the "most significant relationship to the occurrence and the parties under the principles stated." *Id.* at 1001, *citing,* Restatement (Second) of Conflict of Laws § 145. In addition, the court should take into account certain contacts: "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered." *Id.* After careful consideration of the above test and the Restatement's more specific test for defamation in § 149, and in light of what it can discern from the record, the court concludes that Florida substantive law of defamation and privilege applies.

■ Florida law follows the doctrine of absolute privilege in judicial proceedings:
> [I]n order that defamatory words, published by parties, counsel, or witnesses in the due course of a judicial procedure, may be absolutely privileged, they must be connected with, or relevant or material to, the cause in hand or subject of inquiry.

*Myers v. Hodges,* 53 Fla. 197, 44 So. 357 (1907). *See Robertson v. Industrial Insurance Co.,* 75 So.2d 198 (Fla.1954). Florida has found the privilege effective in various settings. *See Procacci v. Zacco,* 402 So.2d 425 (Fla.Dist.Ct.App.1981) (filing of lis pendens is judicial proceeding and within absolute privilege); *Buchanan v. Miami Herald Publishing Co.,* 206 So.2d 465 (Fla.Dist.Ct.App.1968) (grand jury testimony within privilege); *St. Paul Fire and Marine Insurance Co. v. Icard, Merrill, Cullis & Timm, P.A.,* 196 So.2d 219 (Fla.Dist.Ct.App.1967) (absolute privilege applies to statements of fact in pleadings and testimony by witnesses as long as reasonably connected with or material to the case); *Sussman v. Damian,* 355 So.2d 809 (Fla.Dist.Ct.App.1977) (attorney's statements at deposition absolutely privileged so long as relevant to case).

Some Florida cases examine whether alleged defamation which occurs before institution of judicial proceedings falls under the above-mentioned privilege. In *Ange v. State,* 98 Fla. 538, 123 So. 916 (1929), the Florida Supreme Court held that
> [t]his rule of privilege ... includes proceedings before a competent court or magistrate in the due course of law or the administration of justice which is to result in any determination or action by such court or officer. This privilege extends to the protection of the judge, parties, counsel, and witnesses, and arises immediately upon the doing of any act required or permitted by law in the due course of the judicial proceedings or as necessarily preliminary thereto.

123 So. 916, 917. The preliminary statements to which the court afforded a qualified privilege in *Ange* concerned a sheriff's remarks to a judge to whom he had gone to obtain a warrant. Thus, it appears that in application the *Ange* court construed narrowly the privilege for statements made "necessarily preliminary" to judicial proceedings.

In a case which presents a similar situation to that posed here, the Florida Fourth District Court of Appeal found that a qualified privilege applied to an unfiled draft complaint published before judicial proceedings commenced. *Pledger v. Burnup & Sims, Inc.,* 432 So.2d 1323 (Fla.Dist.Ct. App.1983). That case cited situations in which Florida statutory law mandates that a party publish something before she can institute proceedings. *See id.* at 1326. The court went on to find that the publication of a draft complaint (which was never filed) was part of a pre-trial settlement effort and therefore qualifiedly privileged. The *Pledger* court did not recommend a wholesale extension of absolute privilege to various pre-filing settings.

In sum, it appears that Florida courts would not extend the absolute privilege in judicial proceedings to the statements made here. Here, plaintiff's attorney made certain statements to a defendants' business client just before plaintiff filed the instant action. Whatever plaintiff's attorney hoped to elicit from defendants' client had no direct bearing on whether plaintiff would file this case. Plaintiff's attorney's solicitation does not come within the bounds outlined by the above-cited Florida cases: The statements were not made during settlement, nor in a necessary prejudicial setting such as a warrant proceeding. Moreover, once the court takes into account the maxim that it must resolve all doubts in favor of the pleader on a motion to dismiss, *Jenkins v. McKeithen*, 395 U.S. 411, 421–22, 89 S.Ct. 1843, 1848–49, 23 L.Ed.2d 404 (1969), the court finds that Florida law does not extend the absolute privilege given to statements made in judicial proceedings to the instant situation. Accordingly, plaintiff's motion to dismiss must fail.

## II. MOTION FOR RULE 11 SANCTIONS

Plaintiff has also moved this court to impose Rule 11 sanctions on defendants in connection with their filing of the controverted counterclaims. In light of the court's resolution of plaintiff's motion to dismiss, the court also denies plaintiff's motion for Rule 11 sanctions.

In accord with the foregoing, and after careful consideration, the court

ORDERS and ADJUDGES that plaintiff's motion to dismiss defendants' counterclaims is hereby DENIED. The court further

ORDERS and ADJUDGES that plaintiff's motion for Rule 11 sanctions is also DENIED. The court further

ORDERS and ADJUDGES that defendant Molina's former counsel Cohen, Berke, Bernstein, Brodie & Kondell, P.A.'s limited appearance before this court is hereby TERMINATED since plaintiff has withdrawn its motion for sanctions against that law firm.

DONE and ORDERED.