648 So.2d 240 (1994)
Richard A. SILVER, Appellant,
v.
Lawrence LEVINSON, Appellee.
No. 94-1092.
District Court of Appeal of Florida, Fourth District.
December 28, 1994.
Rehearing Denied February 2, 1995.
*241 R. Fred Lewis of Magill & Lewis, P.A., Miami, for appellant.
Raoul G. Cantero, III and Alix J.M. Apollon of Adorno & Zeder, P.A., Miami, for appellee.
PARIENTE, Judge.
Richard A. Silver (defendant) appeals a trial court's order finding that it had personal jurisdiction over defendant, a Connecticut attorney; that venue was proper in Broward County; and that the complaint stated a cause of action for libel.
We have jurisdiction to review the trial court's determination of jurisdiction and venue pursuant to Florida Rules of Appellate Procedure 9.130(a)(3)(A) and (C)(i). Here, because the threshold question of personal jurisdiction turns on whether defendant committed an intentional tort in Florida, we must also necessarily review the complaint to determine whether it states a cause of action for libel. See 8100 R.R. Ave. Realty Trust v. R.W. Tansill Constr. Co., 638 So.2d 149 (Fla. 4th DCA 1994). If the complaint does not set forth a cause of action for the tort of libel, then assertion of personal jurisdiction predicated on the commission of that specific tort would be improper.
Defendant is an attorney who resides and practices in Connecticut. Lawrence Levinson (plaintiff) bases his assertion of personal jurisdiction on defendant's purposeful mailing of an allegedly defamatory letter from Connecticut to Florida and received in Florida by several individual recipients.
Specifically, plaintiff claims defendant wrote a letter to officers and directors of Cancer Treatment Holdings, Inc. (CTH), a company in which plaintiff owned stock. In the letter, attached to the complaint, defendant accused plaintiff of selling stock options at an artificially low price in order to fraudulently deprive his ex-wife of her share of the proceeds from a dissolution settlement agreement. Defendant's letter includes accusations of criminal conduct, including violations of the federal securities laws in connection with the transfer of the stock options. Plaintiff contends that defendant's statements were false and defamatory, made with actual malice and with intent to injure plaintiff. Defendant mailed this letter to CTH officers and directors in Florida. Consequently, plaintiff contends that his reputation has been damaged in Florida. Accepting the well-pleaded allegations of the complaint as true, in conjunction with the actual letter, we conclude that the complaint sets forth a cause of action for the intentional act of libel. *242 See Hay v. Independent Newspapers, Inc., 450 So.2d 293 (Fla. 2d DCA 1984) and cases cited therein. Broward County is a proper venue as the place to which the letters were mailed.
Even if the complaint states a cause of action for libel, defendant contends he cannot be subject to personal jurisdiction in Florida on the basis of a single act, the mailing of the letter into Florida. Defendant's attack on jurisdiction is two-pronged under Venetian Salami Co. v. Parthenais, 554 So.2d 499 (Fla. 1989). Defendant first contends that his mailing of the letters from Connecticut to Florida does not constitute the commission of a tort "within this state" for the purpose of subjecting him to the long arm jurisdiction of the Florida courts under subsection 48.193(1)(b), Florida Statutes (1993). The trial court concluded that the allegations that defendant intentionally mailed the letters to Florida addressees and that plaintiff's injuries occurred in Florida were sufficient to allege a tort committed in the state of Florida. We agree that plaintiff's complaint containing a cause of action for an intentional tort of libel aimed directly at Florida and resulting in injuries to a Florida resident subjected defendant to the reach of our long arm statute.
Under Florida law, the tort of libel is not completed until the statements are published. Firestone v. Time, Inc., 271 So.2d 745 (Fla. 1972), vacated on other grounds, 424 U.S. 448, 96 S.Ct. 958, 47 L.Ed.2d 154 (1976); Hay, 450 So.2d at 293. In this case, the final element of the tort was not satisfied until the letters were received by the addressees in Florida. Until that time, no tort had been "committed." See generally Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 777, 104 S.Ct. 1473, 1479, 79 L.Ed.2d 790 (1984); Restatement (Second) of Torts § 577A, comment a (1977). This conclusion is in consonance with several federal circuit court decisions interpreting Florida law which have found that the place of the publication of the defamatory statement caused by the libel is a relevant inquiry for the purpose of applying Florida's long arm statute. Madara v. Hall, 916 F.2d 1510, 1515 (11th Cir.1990), cited with approval, In re Estate of Vernon, 609 So.2d 128, 129 (Fla. 4th DCA 1992); Rebozo v. Washington Post Co., 515 F.2d 1208, 1211-12 (5th Cir.1975).
In Carida v. Holy Cross Hosp., Inc., 424 So.2d 849 (Fla. 4th DCA 1982), overruled on other grounds, Doe v. Thompson, 620 So.2d 1004 (Fla. 1993), slanderous statements made during a telephone call placed to a Florida number were found to provide a sufficient basis for personal jurisdiction over the nonresident caller. We do not agree that Carida was overruled by Doe because Doe only addressed the "corporate shield" doctrine: section 48.193(1)(b) does not subject an employee to personal jurisdiction who has performed a negligent act outside of the state solely in his corporate capacity even if the injury occurs in Florida. Thompson v. Doe, 596 So.2d 1178 (Fla. 5th DCA 1992), approved, 620 So.2d 1004 (Fla. 1993). Our conclusion is in accordance with the first district's reasoning in Allerton v. State Dept. of Insur., 635 So.2d 36, 40 (Fla. 1st DCA), review denied, 639 So.2d 975 (Fla. 1994):
We do not believe that the supreme court intended in Doe to deprive a Florida plaintiff, injured by the intentional misconduct of a nonresident corporate employee expressly aimed at him, of the right to obtain personal jurisdiction over that employee in a Florida court.
In Doe, the supreme court expressly noted that "[a] corporate officer committing fraud or other intentional misconduct can be subject to personal jurisdiction, however." 620 So.2d at 1006 n. 1 (emphasis supplied). In this case, defendant has not raised the corporate shield defense to personal jurisdiction. Even if he had, he would fall within the exception noted in Doe because he allegedly committed an intentional tort.
In defendant's second prong of attack, he asserts that subjecting him to jurisdiction in Florida violates his due process rights. We must analyze whether subjecting defendant to suit in Florida violates his due process rights even if jurisdiction is proper under Florida's long arm statute. Venetian Salami; Estate of Vernon, 609 So.2d at 128.
The single most important factor to consider is whether "the defendant's conduct *243 and connection with the forum are such that he should reasonably anticipate being haled into court there... ." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 287, 100 S.Ct. 559, 562, 62 L.Ed.2d 490 (1980). This factor must be viewed from the perspective of the defendant, not that of the plaintiff. See Shaffer v. Heitner, 433 U.S. 186, 204, 97 S.Ct. 2569, 2580, 53 L.Ed.2d 683 (1977). Due process requires that the nonresident have sufficient minimum contacts with the state of Florida such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945).
The United States Supreme Court has rejected any "talismanic jurisdictional formula" to determine the requisite minimum contact. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 485-86, 105 S.Ct. 2174, 2189, 85 L.Ed.2d 528 (1985). Subjecting a defendant to in personam jurisdiction based on a single, isolated transaction by the nonresident defendant does not necessarily offend due process. Lacy v. Force V Corporation, 403 So.2d 1050, 1054 (Fla. 1st DCA 1981); see also Godfrey v. Neumann, 373 So.2d 920 (Fla. 1979). Doe does not hold otherwise. The analysis must focus on the nature of the act. When dealing with isolated acts of a defendant, rather than centering on continuous economic activity within the state, a key focus is the quality and nature of the interstate transaction. The court must inquire into whether the conduct is so random, fortuitous or attenuated that it cannot fairly be said that the potential defendant should reasonably anticipate being haled into court in another jurisdiction. Burger King, 471 U.S. at 486, 105 S.Ct. at 2189.
Physical presence within the state is not a necessary prerequisite, subject to the corporate shield doctrine enunciated in Doe. It would be neither logical nor consistent with notions of fair play or with modern realities to subject a nonresident motorist to personal jurisdiction in this state when he negligently injures a Florida resident in Florida based on an isolated act, but conclude that a professional who deliberately sends defamatory material into this state is beyond our jurisdictional reach. Having made our world more accessible through mail, phone and faxes:
[I]t is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted. So long as a commercial actor's efforts are "purposefully directed" toward residents of another State, we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there.
Burger King, 471 U.S. at 476, 105 S.Ct. at 2184 (citations omitted).
In Calder v. Jones, 465 U.S. 783, 789, 104 S.Ct. 1482, 1486-87, 79 L.Ed.2d 804 (1984), the defendant newspaper was a resident of Florida. It had published an allegedly libelous article about a California resident who claimed that she had suffered emotional injury and damage to her California-based career. The United States Supreme Court held that on these facts:
Jurisdiction over petitioners is therefore proper in California based on the "effects" of their Florida conduct in California.
Id. at 783, 104 S.Ct. at 1484. The Supreme Court reasoned that because that was an intentional tort "expressly aimed at" California and because the defendants knew that the brunt of their statements would be felt in California, they must have anticipated being haled into court in California to answer for their actions. Id. at 789-90, 104 S.Ct. at 1487.
Defendant in this case committed an intentional act directly aimed at Florida and made accusations targeted at a Florida resident. He "purposefully directed" his activities at Florida. Burger King, 471 U.S. at 472, 105 S.Ct. at 2182. All of the recipients of the letters and participants in the alleged scheme to commit fraud and violate the federal securities law reside in Broward County, Florida. The mailing was directed to six separate Broward County residents. The actions of defendant were not random, fortuitous or attenuated. The fact that defendant does not otherwise conduct economic activities *244 within the state does not exempt him from the reach of the long arm statute; defendant could have reasonably anticipated being haled into court in Florida due to the fact that his actions were intentional and purposeful, designed to have an effect in South Florida. See Allerton; compare PresKap, Inc. v. System One, Direct Access, Inc., 636 So.2d 1351 (Fla. 3d DCA 1994).
On balance, considerations of fair play and substantial justice permit the exercise of personal jurisdiction when we evaluate the multiple factors set forth in Burger King, including the forum state's interest in adjudicating the dispute and plaintiff's interest in obtaining convenient and effective relief. 471 U.S. at 477, 105 S.Ct. at 2184. Many of the witnesses to the stock transaction reside in Broward County, thereby making Broward County a logical forum for the litigation of this libel action. This state has an interest in adjudicating a dispute where the reputation of one of its citizens has been allegedly damaged as a result of purposeful actions of a nonresident aimed specifically at Florida.
Lastly, we address briefly defendant's contentions that the libel was not actionable because the alleged defamatory language constituted opinion; because the communication on behalf of his client should be absolutely privileged; and because the letter was not published to third parties. The trial court's order denying the motion to dismiss made specific findings, rejecting defendant's contention that the statements were absolutely privileged, and thus not actionable, and rejecting defendant's contention that no publication had occurred because the letters were addressed only to officers and directors of CTH.
In this appeal defendant raises for the first time the additional argument that the letter merely sets forth specific factual statements concerning the stock transaction and then provides his "conclusions" as to the legal ramifications of the facts. Defendant did not make the argument to the trial court that he now makes here: that the allegedly defamatory statements are pure opinion and thus not actionable based on Zambrano v. Devanesan, 484 So.2d 603 (Fla. 4th DCA), review denied, 494 So.2d 1150 (Fla. 1986). Because this specific argument was not made below, we decline to rule on the merits.
More troublesome is defendant's assertion that to hold him liable for writing a letter on behalf of his client attempting to settle the matter prior to filing suit would have a chilling effect on the ability of attorneys to carry out legitimate responsibilities toward their clients. However, as pointed out by the United States Supreme Court in Calder, 465 U.S. at 790, 104 S.Ct. at 1487:
[T]he potential chill on protected First Amendment activity stemming from libel and defamation actions is already taken into account in the constitutional limitations on the substantive law governing such suits.
We agree with the trial court that from the face of the complaint, defendant's claim of absolute privilege must fail. The actions of defendant did not occur during the course of judicial proceedings or constitute a necessary preliminary act to judicial proceedings as contemplated by the supreme court in Ange v. State, 98 Fla. 538, 540, 123 So. 916, 917 (1929) and Myers v. Hodges, 53 Fla. 197, 44 So. 357 (1907). At this stage of the proceedings it is premature to determine whether defendant's actions fall within the criteria for qualified privilege which may attach to good faith settlement negotiations and whether plaintiff can overcome the privilege by proving express malice or malice in fact. See Pledger v. Burnup & Sims, Inc. 432 So.2d 1323, 1326-28 (Fla. 4th DCA 1983), review denied, 446 So.2d 99 (Fla. 1984); Axelrod v. Califano, 357 So.2d 1048 (Fla. 1st DCA 1978); see also Cohen v. Spizz, 493 So.2d 5 (Fla. 3d DCA 1986). It would likewise be premature, without any evidence before us other than the pleadings and affidavits, to make a determination that the recipients of the letter, acting in concert with defendant, were joint venturers so as to defeat the element of publication, a necessary element of libel. See Pledger, 432 So.2d at 1323-24 and cases cited therein.
For all of the above reasons we affirm the order of the trial court.
KLEIN and STEVENSON, JJ., concur.