HAZOURI, J.
Enzyme Environmental Solutions, Inc., Jared Hochstedler and Mark Murphy appeal from a non-final order denying their motion to dismiss for lack of personal jurisdiction. The motion to dismiss was directed at a complaint filed by Steven D. Elias, alleging that these defendants were guilty of securities fraud, violation of the Florida Securities and Investor Protection Act, and conspiracy. The complaint also sought an accounting. In his Complaint, Elias alleged inter alia:
1. Plaintiff STEVEN D. ELIAS (“Elias”) is a citizen of Florida and resides in Broward County, Florida.
2. Upon information and belief, Defendant ENZYME ENVIRONMENTAL SOLUTIONS, INC. (“Enzyme”) is a Nevada corporation, located in Allen County, Indiana, and conducting business in Broward County, Florida.
3. Upon information and belief, Defendant JARED HOCHSTEDLER (“Hochstedler”) is a citizen of Indiana and resides in Allen County, Indiana. *1160 Defendant Hochstedler is the Chief Executive Officer of Defendant Enzyme.
4. Upon information and belief, Defendant MARK MURPHY (“Murphy”) is a citizen of Indiana and resides in Allen County, Indiana. Defendant Murphy is the President of Defendant Enzyme.
5. Venue is proper in Broward County, as the Plaintiff is located in Broward County and the harm caused by the Defendants occurred in Broward County-
The factual allegations were that Hochste-dler and Murphy, within the scope of their employment with Enzyme and individually, made false statements as early as January 2009 in press releases and on internet message boards that Enzyme had received offers to sell its stock to another company. As a result, the stock price increased, Elias bought in March 2009, and then the defendants made statements that they had refused the supposed offers and the stock dropped dramatically. Based upon this fabrication and fraudulent plan called a “pump and dump,” Elias was damaged.
The defendants filed a motion to dismiss for lack of personal jurisdiction. They argued that the allegations in the Complaint did not bring them within the ambit of the long-arm statute and there were not sufficient “minimum contacts” to satisfy due process. The three defendants filed Declarations pursuant to section 92.525, Florida Statutes (2009). Enzyme declared that its principal place of business is Indiana, all its directors and officers reside in Indiana, it has never maintained an office in Florida or conducted any business with Elias in Florida, and it does not have a registered agent in Florida. It does not own property, have a bank account, a telephone, or a post office box in Florida. It has not solicited business from Elias, met with him or had conversations with him in Florida, or anywhere else. It did not sell the stock to Elias.
Hochstedler declared that he lives in Indiana and has never resided, worked, or operated a business in Florida. He does not have a telephone, post office box, or office in Florida. He does have an interest in a timeshare condominium, which he has the right to use for one week every two years. He has never had any meetings, conversations, conducted any business, mailed anything to, or had any contact with Elias.
Murphy’s Declaration was substantially the same, except that he lived in Florida from 1988 until 1990.
In opposition to the motion to dismiss, Elias filed an affidavit in which he averred personal knowledge of the following:
2. When I purchased shares of the common stock of [Enzyme], I did so while in Broward County, Florida. I am also aware of other shareholders in Enzyme who purchased their Enzyme shares in Broward County, Florida.
3. The reason I decided to purchase Enzyme’s stock was due to press releases posted on the internet by the Defendants which contained false information, which I read on my computer in Bro-ward County, Florida, and due to other misleading statements made by the Defendants on their website, which I read on my computer in Broward County, Florida.
4. I have personally read numerous statements made by Enzyme and on behalf of Enzyme in which Enzyme states that its products are sold “nationwide.” Some examples are attached hereto as Exhibit “A.”
5. I have seen the Defendants’ interrogatory response where the Defendants admit that there are five different businesses located in Florida with which they have conducted business in the last five years, although it appears that number is actually much larger.
*1161 6. Enzyme claims to distribute its products nationwide through a company named Wow Green International, Inc. (“Wow Green”). Prior to their agreement with Wow Green, it appears Enzyme sold its products to consumers directly, and it appears highly likely that some of those consumers lived in Florida.
7. Wow Green’s presence in Florida is so substantial that Wow Green’s president, Jordan Zimmerman, lives in the Fort Lauderdale area. True and correct copies of some Wow Green information is [sic] attached hereto as Exhibit “B.”
8. Additionally, the United States Securities and Exchange Commission (the “SEC”) appears to agree with me that the Defendants have substantial contacts to Florida.
9. Due to the Defendants’ allegedly illegal activities in Florida, the SEC filed a lawsuit against Defendants Enzyme and Hochstedler, as well as the Defendants’ accomplices, in the United States District Court for the Middle District of Florida. A true and correct copy of such lawsuit is attached hereto as Exhibit “C.”
10. Defendants [Enzyme], and Hochstedler have answered the SEC’s lawsuit and have admitted jurisdiction in Florida. A true and correct copy of the answer is attached hereto as Exhibit “D.”
11. The court records indicate that the SEC lawsuit against Defendants Enzyme and Hochstedler is ongoing. In other words, the case in Florida in which Defendants Enzyme and Hochstedler have admitted jurisdiction continues to proceed at the same time as the Defendants attempt to contest jurisdiction before this Court.
In order to establish personal jurisdiction over a nonresident defendant, a plaintiff must satisfy a two-part test. The first part of the test is whether the complaint alleges sufficient jurisdictional facts to satisfy Florida’s long-arm statute, section 48.193. The second part of the test is whether it has been demonstrated that the defendant has had sufficient minimum contacts with Florida to satisfy due process requirements “such that the maintenance of the suit does not offend ‘traditional notions of fair play and substantial justice.’ ”
See Two Worlds United v. Zylstra, 46 So.3d 1175, 1177 (Fla. 2d DCA 2010) (citations omitted).
The defendants argue that the second prong of Venetian Salami Co. v. Parthenais, 554 So.2d 499 (Fla.1989), is not met because there are insufficient minimum contacts within the State of Florida to comport with due process. We agree.
Because we conclude that Elias’s allegations which attempt to establish personal jurisdiction fail to meet the test of sufficient minimum contacts in order to satisfy due process requirements, we need not address whether the complaint alleges sufficient jurisdictional facts to satisfy Florida’s long-arm statute.
“A court can exercise personal jurisdiction only if the nonresident defendant maintains ‘certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend ‘traditional notions of fair play and substantial justice.’ ” ’ ’’Reiss v. Ocean World, S.A, 11 So.3d 404, 407 (Fla. 4th DCA 2009) (quoting Execur-Tech Bus. Sys., Inc. v. New Oji Paper Co., 752 So.2d 582, 584 (Fla.2000) (quoting Int’l Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945))). “Adequate minimum contacts are established if the court finds that ‘the defendant’s conduct and connection with the forum State are such that he should reasonably anticipate being haled *1162 into court there.’ ” Reiss, 11 So.3d at 407 (quoting Worldr-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)). “There must ‘be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.’ ” Id. (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (citation omitted)).
In Renaissance Health Publishing, LLC v. Resveratrol Partners, LLC, 982 So.2d 739 (Fla. 4th DCA 2008), this court discussed the issue of minimum contacts in defamation cases. This court stated:
The second Venetian Salami question is whether the defendants had sufficient minimum contacts with Florida so that the maintenance of a suit here does not offend “traditional notions of fair play and substantial justice.” “The requirement is satisfied if the defendant purposefully directs activities at Florida and litigation arises out of those activities, or the defendant purposefully avails himself of the privilege of conducting activities within the forum state.”
In Silver [v. Levinson, 648 So.2d 240 (Fla. 4th DCA 1994)], we held that a defendant who mailed a defamatory letter from Connecticut to six recipients in Florida had sufficient minimum contacts with Florida to be subject to suit here. Posting information on the Internet is different — “when a person places information on the Internet, he can communicate with persons in virtually every jurisdiction.” ALS Scan, Inc. v. Digital Serv. Consultants, Inc., 293 F.3d 707, 712 (4th Cir.2002). An interactive website which allows a defendant to enter into contracts to sell products to Florida residents, and which “involve[s] the knowing and repeated transmission of computer files over the internet,” may support a finding of personal jurisdiction.
... This case is distinguishable from internet defamation cases involving passive websites not designed to market products in the purported forum state.
Id. at 742 (citations omitted) (emphasis added). In Renaissance, we found there were sufficient minimum contacts because the purpose of the business defamation was to convince consumers to purchase the defendants’ products and not the plaintiffs. Although the defendants’ sales to Florida residents were only 2.4% of its total domestic sales, that commercial activity in Florida was sufficient to subject the defendants to jurisdiction because the disparagement was meant to enhance the defendants’ sales in this state, where the plaintiff has its corporate headquarters and the defendants could “reasonably anticipate being haled into court there.” Id. at 742 (citations omitted).
In the instant case, there is no evidence that the false statements were purposefully directed toward the residents of Florida. Assuming the defendants were actually trying to “pump and dump” their stock, they were targeting anyone and everyone who might go on the Internet to read about stocks on websites that publish information about stocks. The only basis for minimum contacts that Elias presents is the defendants’ “admitted business relationships with at least five different Florida businesses,” that they appear to have sold products in Florida, and that Enzyme and Hochstedler have agreed to jurisdiction in federal court albeit under federal SEC laws, not Florida’s long-arm statute.
In Elias’s affidavit, he fails to state any direct knowledge of any significant business transactions in Florida by the defendants. Much of Elias’s affidavit is mere speculation. The fact that the defendants *1163 have been sued in federal court in Florida by the SEC for alleged violations of sections of the Securities Act does not satisfy the requirement of establishing minimum contacts.
It therefore appears that Elias has not shown sufficient minimum contacts by the defendants with the State of Florida. We reverse and remand and direct the trial court to dismiss Elias’s complaint for lack of personal jurisdiction over the defendants.

Reversed and Remanded.

GROSS, C.J., and CIKLIN, J„ concur.