982 So.2d 739 (2008)
RENAISSANCE HEALTH PUBLISHING, LLC, Appellant,
v.
RESVERATROL PARTNERS, LLC, and Bill Sardi, Appellees.
No. 4D07-2195.
District Court of Appeal of Florida, Fourth District.
April 30, 2008.
Rehearing Denied June 18, 2008.
*740 Joel B. Rothman and Misha J. Kerr of Seiden, Alder, Matthewman & Bloch, P.A., Boca Raton, for appellant.
Joseph H. Lowe of Stephens Lynn Klein LaCava Hoffman & Puya, P.A., Miami, for appellees.
GROSS, J.
The plaintiff/appellant, Renaissance Health Publishing, LLC, appeals an order granting the defendants' motions to dismiss for lack of personal jurisdiction. We reverse, finding that the defendants had sufficient minimum contacts with Florida where their interactive website libeled the product of a Florida corporation and the defendants sold competing products in Florida through the website.
In the circuit court, Renaissance, a Florida corporation, sued Resveratrol Partners, LLC and Bill Sardi for trade libel and two related statutory violations, all arising from statements made on the defendants' website disparaging Renaissance's products. The complaint alleged that Renaissance marketed Resveratrol, a red wine extract; the defendants sold publications about food supplements, both in a traditional paper format and as e-books; and the defendants falsely and intentionally disparaged the quality of Resveratrol on their internet website, www.longevinex. com.
As to jurisdiction, the complaint alleged that (1) Resveratrol Partners was a Nevada limited liability company with its principal place of business in California; (2) Bill Sardi was president of Resveratrol Partners and the author of one of the offending stories; (3) the defendants did business in Florida; (4) "a substantial part of the events giving rise to this litigation" occurred in Florida, and (5) the defendants were "transacting business" in Florida by
(a) providing Internet users in Florida access to its web sites; (b) contracting with, or attempting to contract with, Florida residents for the sale of goods and services, including the sale of the articles described herein on its Internet web sites; (c) selling or attempting to sell goods or services to residents of the State of Florida; (d) maintaining an office *741 in the State of Florida; and/or (e) committing tortious acts in the State of Florida.
Defendants moved to dismiss the complaint for lack of personal jurisdiction, because they did not fall within the ambit of the long-arm statute, section 48.193, Florida Statutes (2007), and because they had so little contact with Florida that subjecting them to the jurisdiction of a Florida court would offend constitutional due process considerations.
After limited discovery concerning jurisdiction, certain facts crystallized. Neither Sardi nor Resveratrol Partners (1) maintained an office in Florida; (2) employed a business agent in Florida; (3) owned any property in Florida; (4) maintained bank accounts in Florida, or (5) solicited Florida business through direct mail, magazine or periodical delivered to Florida, or any Florida based broadcast or cable advertising. Defendants sold Longevinex to consumers primarily via the internet at the Longevinex website. Sales of Longevinex to Florida residents through the website represented 2.4% of Resveratrol Partners' total gross domestic sales. In the three-year period prior to the filing of this lawsuit, Sardi sold 86 books and e-books to Florida residents, which realized $2,101.83 in sales.
The trial court granted the defendants' motion to dismiss. See Fla. R. Civ. P. 1.140(b)(2). Renaissance appealed. See Fla. R.App. P. 9.130(a)(3)(C)(i).
A trial court's ruling on a motion to dismiss for lack of personal jurisdiction is reviewed de novo. See Carib-USA Ship Lines Bahamas Ltd. v. Dorsett, 935 So.2d 1272, 1275 (Fla. 4th DCA 2006).
To evaluate personal jurisdiction under the long-arm statute, Florida courts must engage in the two-part analysis set forth in Venetian Salami Co. v. Parthenais, 554 So.2d 499, 502 (Fla.1989).
First, there must be sufficient facts to bring the action within the ambit of the long-arm statute; if the statute applies, the next inquiry is whether there are sufficient "minimum contacts" to satisfy due process requirements. "Both parts must be satisfied for a court to exercise personal jurisdiction over a non-resident defendant." Am. Fin. Trading Corp. v. Bauer, 828 So.2d 1071, 1074 (Fla. 4th DCA 2002).
Looking first at the long-arm statute, we hold that the defendants are subject to Florida's jurisdiction under section 48.193(1)(b), which allows a Florida court to assert jurisdiction over a nonresident defendant who "personally or through an agent . . . commit[ed] a tortious act within this state."
In Wendt v. Horowitz, 822 So.2d 1252, 1253 (Fla.2002), the supreme court held that "making telephonic, electronic, or written communications into this State" can amount to the commission of a "tortious act within this state" under section 48.193(b), "provided that the tort alleged arises from such communications." A "defendant's physical presence" in Florida is not required to commit a tortious act in Florida under the long-arm statute. Id. at 1260. Wendt approved cases from this court where defamation occurred in telephone conversations with persons in Florida, Acquadro v. Bergeron, 778 So.2d 1034 (Fla. 4th DCA 2001), and in a letter mailed from Connecticut and received in Florida, Silver v. Levinson, 648 So.2d 240 (Fla. 4th DCA 1994); see also Achievers Unlimited, Inc. v. Nutri Herb, Inc., 710 So.2d 716, 718 (Fla. 4th DCA 1998) (observing that "[m]aking a defamatory statement to a listener in Florida, even via telephone, constitutes the commission of a tort in Florida *742 within the meaning of Florida's long-arm statute.").
Relying on Wendt, we held that defamatory comments posted in an internet chat room "that were targeted to Florida residents, or people likely to seek medical care" in Florida were electronic communications that fell within section 48.193(1)(b). Becker v. Hooshmand, 841 So.2d 561, 563 (Fla. 4th DCA 2003). The defendants' interactive web site which sells product to Florida residents is akin to the chat room in Becker. Applying Wendt and Becker, we conclude that the initial burden under Venetian Salami was satisfied.
The second Venetian Salami question is whether the defendants had sufficient minimum contacts with Florida so that the maintenance of a suit here does not offend "traditional notions of fair play and substantial justice." Execu-Tech Bus. Sys., Inc. v. New Oji Paper Co., 752 So.2d 582, 584 (Fla.2000) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940))). "The requirement is satisfied if the defendant purposefully directs activities at Florida and litigation arises out of those activities, or the defendant purposefully avails himself of the privilege of conducting activities within the forum state." Achievers Unlimited, 710 So.2d at 719; Silver, 648 So.2d at 243-44.
In Silver, we held that a defendant who mailed a defamatory letter from Connecticut to six recipients in Florida had sufficient minimum contacts with Florida to be subject to suit here. Posting information on the Internet is different"when a person places information on the Internet, he can communicate with persons in virtually every jurisdiction." ALS Scan, Inc. v. Digital Serv. Consultants, Inc., 293 F.3d 707, 712 (4th Cir.2002). An interactive website which allows a defendant to enter into contracts to sell products to Florida residents, and which "involve[s] the knowing and repeated transmission of computer files over the internet," may support a finding of personal jurisdiction. Zippo Mfg. Co. v. Zippo Dot Com, Inc., 952 F.Supp. 1119, 1124 (W.D.Pa.1997); see Westwind Limousine, Inc. v. Shorter, 932 So.2d 571, 575 n. 7 (Fla. 5th DCA 2006) (recognizing the distinction between a passive website and an active website designed to market products in Florida).
The purpose of the alleged business defamation in this case was to convince consumers to purchase the defendants' products and not the plaintiff's. Sales to Florida residents through the interactive website totaled 2.4% of Resveratrol's total gross domestic sales; Sardi sold books and e-books to Florida residents realizing $2,101.83 in sales. Such commercial activity within Florida is sufficient to subject the defendants to jurisdiction herewhere a defendant disparages a competitor's products to enhance its own commercial sales in a state where the competitor has its corporate headquarters, the defendant could "reasonably anticipate being haled into court there." See Calder v. Jones, 465 U.S. 783, 790, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984) (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)); see Hartoy, Inc. v. Thompson, 2003 WL 21468079 (S.D.Fla.2003) (involving five orders from defendant's website totaling $325); Nida Corp. v. Nida, 118 F.Supp.2d 1223, 1231-32 (M.D.Fla.2000) (involving approximately $27,417 in revenue from sales in Florida). This case is distinguishable from internet defamation cases involving passive websites not designed to market products in the purported forum state. See Revell v. Lidov, 317 F.3d 467 (5th Cir.2002); Hy Cite Corp. v. *743 Badbusinessbureau.com, L.L.C., 297 F.Supp.2d 1154 (W.D.Wis.2004).
STONE and WARNER, JJ., concur.