PARIENTE, J.
 

 Tabatha Marshall, a resident of the State of Washington, owns and operates a website on which she posts about consumer-related issues. According to Internet Solutions Corporation (ISC), Marshall made posts on her website in which she accused ISC, an employment and recruiting firm, of ongoing criminal activity. ISC, whose principal place of business is in Florida, sued Marshall for defamation in a federal district court in Florida. The only issue in this case is whether Marshall’s allegedly defamatory posts on her website
 
 *1203
 
 subject her to personal jurisdiction in Florida under this state’s long-arm statute.
 
 [1]
 

 We rephrase the question certified to us by the Eleventh Circuit Court of Appeals to narrowly focus on the issue of whether defamatory posts about a Florida corporation on an out-of-state website by the operator of the website constitute the commission of a tortious act within Florida under the long-arm statute, specifically section 48.19300(b), Florida Statutes (2007).
 
 [2]
 
 Accordingly, we rephrase the certified question as follows:
 

 DOES A NONRESIDENT COMMIT A TORTIOUS ACT WITHIN FLORIDA FOR PURPOSES OF SECTION 48.193(1)0») WHEN HE OR SHE MAKES ALLEGEDLY DEFAMATORY STATEMENTS ABOUT A COMPANY WITH ITS PRINCIPAL PLACE OF BUSINESS IN FLORIDA BY POSTING THOSE STATEMENTS ON A WEBSITE, WHERE THE WEBSITE POSTS CONTAINING THE STATEMENTS ARE ACCESSIBLE AND ACCESSED IN FLORIDA?
 

 We answer the rephrased certified question in the affirmative. We conclude that posting defamatory material on a website alone does not constitute the commission of a tortious act within Florida for purposes of section 48.193(l)(b), Florida Statutes. Rather, the material posted on the website about a Florida resident must not only be
 
 accessible
 
 in Florida, but also be
 
 accessed
 
 in Florida in order to constitute the commission of the tortious act of defamation within Florida under section 48.193(l)(b).
 

 FACTS AND PROCEDURAL HISTORY
 

 ISC is a Nevada for-profit corporation, which alleged that its principal place of business is in Orlando, Florida. ISC operates a number of websites that deal with employment recruiting and Internet advertising. Tabatha ’ Marshall is a private individual who resides in the State of Washington. Marshall owns and operates tabathamarshall.com, a noncommercial website on which she posts information about consumer-related issues. The website permits third parties to comment on Marshall’s posts, with the comments appearing on the same webpage as the original post. In August 2007, Marshall made a post on her website about VeriResume, one of the websites operated by ISC, entitled “Something’s VeriRotten with VeriRe-sume ...” This post included a listing of affiliates of VeriResume, including ISC, and listed Florida addresses. Third parties posted comments on this post, and Marshall responded to some of the comments. From a review of the exhibits attached to the complaint, several of the commenters appeared to be from Florida (“Mrs. C near OrlandoFL,” “Suzanne C— Orlando, FL,” and “anonymous — Orlando, FL”). Contact information for VeriRe-sume and other ISC affiliates also appeared to be listed on a separate part of
 
 *1204
 
 the website, including Florida addresses for ISC. Printouts of these webpages were attached to ISC’s complaint.
 

 ISC filed a diversity action against Marshall in the Middle District of Florida, alleging several causes of action, including a claim for defamation. ISC contended that the court had personal jurisdiction ovér Marshall because she had entered into the State of Florida to commit a tor-tious act
 
 [3]
 
 and should have known that her repeated defamatory statements would subject her to litigation in Florida. Regarding the allegedly defamatory statements, ISC asserted that Marshall’s posts contained statements alleging that ISC “was, and is, engaged in on-going criminal activity, specifically ‘phishing’[
 
 4
 
 ] and consumer fraud through ‘scamming’ and other actionable conduct to defraud consumers,” that Marshall posted statements alleging that ISC “is engaged in on-going criminal activity of obtaining consumers’ personal information and illegally selling it to third parties,” and that Marshall’s websites “contain numerous defamatory statements designed to expose [ISC] to public contempt and ridicule and injure [ISC] in its businesses.... Particularly ... [ISC’s] businesses are ‘scams’ and are ‘phishing’ operations utilize [sic] to steal personal information for the purposes, of identity theft.” ISC further asserted that the individual statements contained in the posts, “when taken as a whole, inculpate [ISC] with moral turpitude and charge [ISC] with unfitness and lack of integrity in the performance of its businesses.”
 
 Id.
 
 ISC asserted that Marshall knowingly published these statements with the intent to harm ISC’s business reputation.
 

 . Marshall filed a motion to dismiss the complaint for lack of personal jurisdiction. Specifically, she contended that she had not committed a tortious act in Florida for purposes of Florida’s long-arm statute. She also asserted that even if ISC could satisfy Florida’s long-arm statute, subjecting her to personal jurisdiction in Florida would violate federal due process. As part of this motion, Marshall filed a declaration detailing her lack of contacts with Florida.
 
 [5]
 

 
 *1205
 
 The district court granted Marshall’s motion and dismissed the case for lack of personal jurisdiction.
 
 Internet Solutions Corp. v. Marshall,
 
 No. 6:07-ev-1740-Orl-22KRS, 2008 WL 958186 (M.D.Fla. Apr.8, 2008). The court recognized that the determination of personal jurisdiction over a nonresident defendant consists of a two-part inquiry: (1) whether the exercise of jurisdiction is appropriate under Florida’s long-arm statute; and (2) whether the exercise of personal jurisdiction would violate due process.
 
 Id.
 
 at *2. In determining whether Marshall was subject to personal jurisdiction under section 48.193(l)(b) of the long-arm statute, the district court noted that the Eleventh Circuit had established that an out-of-state defendant’s commission of a tort that produces an injury in Florida was sufficient for purposes of section 48.198(1)(b).
 
 Id.
 
 at *2 (citing
 
 Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A.,
 
 421 F.3d 1162, 1168 (11th Cir.2005)). The court assumed that the tortious conduct element had been satisfied and held that Marshall had not adequately rebutted ISC’s allegations that a tort was committed in Florida that resulted in injury in Florida.
 
 Id.
 
 at *3.
 

 However, the district court determined that the exercise of personal jurisdiction would violate due process. The court stated that the minimum contacts required for due process must be purposeful contacts and concluded:
 

 [T]here is no evidence that Marshall specifically targeted Florida residents. Marshall’s website was not only made available to Florida residents, but the website was equally accessible to persons in all states.... In addition, the postings do not specifically mention Florida or its residents nor do they amount to purposeful availment.... Marshall has not made Florida-specific contacts. The mere fact that Marshall’s website was accessible to residents everywhere and a resident of Florida responded does not amount to purposeful availment.
 

 Id.
 
 at *4. The district court further concluded that “[t]he fact that Marshall post-' ed comments on her website ..., which were accessible to residents everywhere does not indicate that Marshall could reasonably anticipate being haled into a Florida court.”
 
 Id.
 
 The district court did not address the specific issue of whether the fact that ISC alleged that its principal place of business was in Florida or the fact that Marshall listed Florida addresses for ISC on her website would be evidence of targeting a Florida resident, but rather concluded that “there is no evidence that Marshall specifically targeted Florida residents.”
 
 Id.
 
 at *4. The district court then dismissed the case for lack of personal jurisdiction.
 
 Id.
 
 at *3-5. ISC appealed the district court’s dismissal.
 

 On appeal, the Eleventh Circuit Court of Appeals set out the two-step inquiry to determine whether the exercise of personal jurisdiction over a nonresident defendant is proper:
 

 First, we examine whether the exercise of jurisdiction would be appropriate under that state’s long-arm statute. “Second, we examine whether the exercise of personal jurisdiction over the defendant would violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution.” The due process inquiry requires us to determine whether “the defendant ha[s] minimum contacts with the forum state” and if the district court’s exercising of jurisdiction over that defendant would “offend traditional notions of fair play and substantial justice.”
 

 Internet Solutions Corp.,
 
 557 F.3d at 1295-96 (citations omitted) (quoting
 
 Horizon Aggressive Growth,
 
 421 F.3d at 1166).
 

 
 *1206
 
 Regarding the first part of the inquiry, the Eleventh Circuit stated that Florida’s long-arm statute permits the exercise of jurisdiction over a cause of action arising out of a tortious act committed within Florida.
 
 Id.
 
 at 1296 (citing § 48.193(1)(b), Fla. Stat. (2008)). The Eleventh Circuit recognized that Florida law provides that, for purposes of the statute, the defendant does not have to be physically present in Florida for the tortious act to occur in Florida.
 
 Id.
 
 Also, a defendant could commit a tortious act within Florida by sending telephonic, electronic, or written communications into Florida, provided the cause of action arose from those communications.
 
 Id.
 
 The Eleventh Circuit reasoned that “Marshall thus would be subject to jurisdiction under § 48.193(1)(b) if her allegedly defamatory postings on her website constituted electronic communications ‘into Florida.’ ”
 
 Id.
 
 However, “[t]he Florida Supreme Court has yet to address whether the posting of information on an out-of-state website about a company with its principal place of business in Florida would meet the statutory requirements for long-arm jurisdiction.”
 
 Id.
 
 After reviewing both Florida case law and federal district court case law, the Eleventh Circuit concluded that “Florida law is unsettled regarding whether Marshall’s actions would meet the requirements of § 48.193(1)(b).”
 
 Id.
 
 Because the case involved a question of Florida law for which there is no clear controlling precedent, the Eleventh Circuit certified the question that is before this Court. The Eleventh Circuit did not address the second step of the jurisdictional inquiry, which is whether the exercise of jurisdiction would violate due process.
 

 ANALYSIS
 

 We first distinguish the subject of the certified question from the issue of whether exercising jurisdiction over Marshall would violate due process. We next examine the relevant provision of Florida’s long-arm statute. Then we review the relevant case law interpreting section 48.193(l)(b). After this review, we conclude that allegedly defamatory material about a Florida resident placed on the Web and accessible in Florida constitutes an “electronic communication into Florida” when the material is accessed (or “published”) in Florida. Finally, we apply that interpretation to this case.
 

 The rephrased certified question from the Eleventh Circuit involves whether the facts of this case, as alleged in the complaint, would satisfy Florida’s long-arm statute. Specifically, the rephrased certified question asks this Court whether a nonresident commits a tortious act within Florida for purposes of the long-arm statute when he or she makes allegedly defamatory statements about a company with its principal place of business in Florida by posting those statements on a website, where the website posts containing the statements are accessible and accessed in Florida.
 
 [6]
 

 We begin by recognizing that the question of whether the alleged defamatory
 
 *1207
 
 material in this case satisfies the requirements of Florida’s long-arm statute is separate from the federal due process inquiry. Similar to the analysis employed by the Eleventh Circuit, this Court has articulated a two-step inquiry for determining whether long-arm jurisdiction over a nonresident defendant is proper:
 

 First, it must be determined that the complaint alleges sufficient jurisdictional facts to bring the action within the ambit of the statute; and if it does, the next inquiry is whether sufficient “minimum contacts” are demonstrated to satisfy due process requirements.
 

 The first prong — i.e., the statutory prong — of the
 
 Venetian Salami
 
 standard is governed by Florida’s long-arm statute and bestows broad jurisdiction on Florida courts. A court can exercise personal jurisdiction,
 
 inter alia,
 
 whenever a foreign corporation commits a “tor-tious act” on Florida soil. The second prong — i.e., the constitutional prong — is controlled by United States Supreme Court precedent interpreting the Due Process Clause and imposes a more restrictive requirement. A court can exercise personal jurisdiction only if the foreign corporation maintains “certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend ‘traditional notions of fair play and substantial justice.’ ”
 

 Wendt v. Horowitz,
 
 822 So.2d 1252, 1257 (Fla.2002) (quoting
 
 Execu-Tech Bus. Sys., Inc. v. New Oji Paper Co.,
 
 752 So.2d 582, 584 (Fla.2000)). In
 
 Venetian Salami Co. v. Parthenais,
 
 554 So.2d 499 (Fla.1989), this Court recognized that the federal due process analysis is
 
 not
 
 built into Florida’s long-arm statute: “The mere proof of any one of the several circumstances enumerated in section 48.193 as the basis for obtaining jurisdiction of nonresidents does not automatically satisfy the due process requirement of minimum contacts.”
 
 Id.
 
 at 502. At issue in this case is the first prong — that is, whether ISC’s complaint alleges sufficient jurisdictional facts to satisfy section 48.193(l)(b) of Florida’s long-arm statute.
 

 ISC contends that jurisdiction over Marshall is proper under section 48.193(l)(b) of Florida’s long arm statute. Specifically, ISC alleges that Marshall committed a tortious act within Florida by posting defamatory material about a Florida company on her noncommercial out-of-state website.
 

 Florida’s long-arm statute was first enacted in 1973, and subsection (l)(b) has not been amended since that time. Thus, the Florida Legislature has never specifically considered the impact of the explosion of the World Wide Web on personal jurisdiction under the long-arm statute. Accordingly, it is our responsibility to construe the statute based on the actual language as guided by our precedent.
 

 We now turn to an examination of the relevant case law, discussing first the relevant case law applying section 48.193(l')(b) in the non-Web context'and then the cases involving section 48.193(l)(b) in the Web context.
 

 Relevant Case Law Applying Section 48.193(l)(b) to Telephonic, Electronic, or Written Communications
 

 In
 
 Wendt,
 
 this Court considered the meaning of “Committing a tortious act within this state” under section 48.193(1)(b).
 
 Wendt,
 
 822 So.2d at 1258. In particular, the question before this Court in
 
 Wendt
 
 was whether “making telephonic, electronic, or written communications into Florida from outside of the State can constitute ‘committing a tortious act’ under section 48.193(1)(b).”
 
 Id.
 
 In that case, Wendt, a Florida resident and resident agent for an out-of-state corporation
 
 *1208
 
 who solicited investors for the corporation, filed a third-party complaint against a nonresident attorney and law firm, claiming that he had relied to his detriment on the attorney’s legal advice.
 
 Id.
 
 at 1254-55. Wendt asserted that the attorney had committed a tortious act in Florida by negligently responding in writing to an investigation by the Division of Securities relating to the alleged sale of unregistered securities and negligently drafting loan documents that were knowingly intended to be evidence of loans to be made by Florida investors to the corporation.
 
 Id.
 
 at 1255. The attorney moved to dismiss for lack of personal jurisdiction, asserting that his contacts with Florida only involved telephonic or mail correspondence and never involved travel to Florida.
 
 Id.
 
 The trial court denied the motion to dismiss and, on appeal, the Fifth District Court of Appeal held that no tortious act was committed in Florida because the alleged acts were performed in Michigan.
 
 Id.
 
 at 1256.
 

 After reviewing relevant case law, this Court held that a defendant’s physical presence is not necessary to commit a tortious act in Florida.
 
 Id.
 
 at 1260. Rather, “ ‘committing a tortious act’ in Florida under section 48.193(1)(b) can occur through the nonresident defendant’s telephonic, electronic, or written communications
 
 into
 
 Florida.”
 
 Id.
 
 (emphasis added). “However, the cause of action must arise from the communications” — “[t]his predicate finding is necessary because of the connexity requirement contained in section 48.193(1).”
 
 Id.
 

 In this case, the Eleventh Circuit recognized that, under
 
 Wendt,
 
 Marshall would be subject to jurisdiction under section 48.193(l)(b) if her allegedly defamatory posts on her website constituted electronic communications “into Florida.”
 
 Internet Solutions Corp.,
 
 557 F.3d at 1296. The determination of whether certain acts constitute communications into Florida is straightforward when the case concerns telephonic communications, written communications, or electronic communications in the form of e-mails or facsimiles, because those communications are directed to reach a specific recipient in a specific forum; in other words, it is clear that the nonresident defendant’s communications were made into Florida. For example, in
 
 Acquadro v. Bergeron,
 
 851 So.2d 665, 670 (Fla.2003), this Court held that “allegedly defamatory phone calls made into Florida by a nonresident could be sufficient to establish personal jurisdiction” on the basis of
 
 Wendt.
 
 In
 
 Acquadro,
 
 a defamation claim was brought against the nonresident defendant based upon a telephone call from Massachusetts to the plaintiff, the plaintiffs sister, and another third party in Florida in which the defendant stated that the plaintiff “had AIDS.”
 
 Id.
 
 at 668. The Court noted in a footnote that although the record was not completely clear, it appeared that the telephone call was a conference call in which the third party called the defendant in Massachusetts, and they proceeded to call the defendant in Florida.
 
 Id.
 
 at 668 n. 7.
 
 [7]
 

 Other courts, both state and federal, applying Florida law have also held that communications made during a telephone call between a person in Florida and an out-of-state defendant constitute telephonic communications into Florida and confer personal jurisdiction over the nonresident defendant under section 48.193(l)(b), provided the cause of action arose from the telephonic communication as required by
 
 *1209
 
 the statute and clarified in
 
 Wendt
 
 The cases considering whether a telephonic communication constituted a tortious act in Florida have not explicitly hinged a finding of jurisdiction on whether or not the nonresident defendant initiated the phone call into Florida. Rather, the cases focus on whether the nonresident defendant made the subject communications during a phone call between the out-of-state defendant and someone in Florida.
 
 See, e.g., Hou v. United Airlines Corp.,
 
 No. 806CV-1502-T-27TGW, 2006 WL 2884963, at *2 (M.D.Fla. Oct.10, 2006) (holding that alleged fraudulent statements by the defendants that occurred during a telephone call initiated by the plaintiff satisfied section 48.193(1)(b) (citing
 
 Wendt,
 
 822 So.2d at 1260));
 
 OSI Indus., Inc. v. Carter,
 
 834 So.2d 362, 364-65 (Fla. 5th DCA 2003) (holding that a nonresident defendant who called plaintiff in Florida and allegedly made misrepresentations during the conversation satisfied 48.193(1)(b)).
 

 In a case on a similar topic but with distinguishable facts, the Second District Court of Appeal in an en banc decision held that the out-of-state recording of a phone call originating in Florida did not constitute the commission of a tortious act within the state.
 
 Kountze v. Kountze,
 
 996 So.2d 246 (Fla. 2d DCA 2008). The court receded from a previous case in which it had decided that the defendant’s “interception” of the telephone call occurred at the point of origin in Florida and not at the point of reception and recording in the foreign state.
 
 Id.
 
 at 247. The court instead concluded that a Florida statute that created a private cause of action for the nonconsensual interception of a communication originating within Florida could not transform the nonresident defendant’s out-of-state recording into a “tortious act within the state” for jurisdictional purposes.
 
 Id.
 
 at 248. The court was “admittedly influenced by the fact that the act was not illegal in the state where the defendant actually committed it and was not illegal under the federal law that would apply to interstate telephone calls.”
 
 Id.
 
 at 252. In its holding, the court distinguished the case from cases in which a conversation was directed into Florida over an interstate telephone call that was defamatory, fraudulent, or otherwise an element of a traditional intentional tort under the common law.
 
 Id.
 
 at 248.
 

 Courts have also held that electronic communications over the Internet in the form of e-mails and chat room conversations into Florida give rise to personal jurisdiction under section 48.193(l)(b) on the basis of
 
 Wendt.
 
 In the e-mail context, a Fifth District Court of Appeal case applied section 48.193(l)(b) to an out-of-state defendant who sent an e-mail that allegedly defamed a Florida resident to various members of a veterans’ association, some of whom lived in Florida.
 
 Price v. Kronenberger,
 
 24 So.3d 775, 776 (Fla. 5th DCA 2009). The nonresident defendant moved to dismiss the complaint, contending that personal jurisdiction could not be asserted over him because he addressed the e-mail only to the association members generally and did not specifically target Florida residents as recipients.
 
 Id.
 
 The court stated that “[a] complaint that alleges a nonresident committed a tortious act based on communications directed into Florida tele-phonically, electronically, or in writing sufficiently alleges personal jurisdiction under section 48.193(1)(b).”
 
 Id.
 
 (citing
 
 Acquadro,
 
 851 So.2d at 670;
 
 Wendt,
 
 822 So.2d at 1260). The court held that the plaintiffs complaint “did just this when it alleged the [nonresident defendant] sent the e-mail to various members of [the association], some of whom live in Florida.”
 
 Id.
 

 In the chat room context, a Fourth District Court of Appeal case specifically addressed the issue of whether defamatory
 
 *1210
 
 statements in a chat room constituted electronic communications into Florida under
 
 Wendt. Becker v. Hooshmand,
 
 841 So.2d 561 (Fla. 4th DCA 2003). In
 
 Becker,
 
 the plaintiff, a licensed physician practicing in Florida, filed a complaint alleging that the out-of-state defendant was a moderator of an Internet chat room and had “posted numerous defamatory comments about him that were targeted to Florida residents, or people likely to seek medical care in the state of Florida, which resulted in injury to his reputation and business.”
 
 Id.
 
 at 561. The district court quoted this Court’s decision in
 
 Wendt
 
 that a defendant’s physical presence is not required and that committing a tortious act in Florida can occur through the nonresident defendant’s telephonic, electronic, or written communications into Florida.
 
 Id.
 
 at 562-63. The Fourth District concluded that the alleged defamatory comments in the chat room were sufficient to satisfy section 48.193(1)(b) because “the communications that form the basis of the allegations in this case are analogous to cases previously decided by this court and certainly fit within the recent Supreme Court’s discussion of electronic communications.”
 
 Id.
 
 at 563. Although the chat room conversation took place over the Internet, we note that statements made in a chat room, such as in
 
 Becker,
 
 are easily analogized to a conference telephone call because a person typing comments in a chat room is directing his or her communication to a specific group of individuals, much like a person speaking during a telephone conference call, as in
 
 Acquadro,
 
 or a person sending an e-mail to multiple recipients, as in
 
 Price.
 

 Relevant Case Law Applying Section 48.193(1) (b) to the World Wide Web
 

 The question of whether a posting on a website, which is located on the World Wide Web, constitutes an electronic communication into Florida is a more difficult one than telephone calls, e-mails, chat rooms, and facsimiles because the posting is typically accessible from any state and is not directed by the alleged tortfeasor into a particular forum in the same way as a phone call, letter, e-mail, chat room, or facsimile. As explained by a Connecticut court, “Unlike the letter or e-mail cases,” a posting on a website “is not sent anywhere in particular, but rather can be accessed from anywhere in the world.”
 
 Rios v. Fergusan,
 
 51 Conn.Supp. 212, 978 A.2d 592, 598 (2008) (quoting
 
 Dailey v. Popma,
 
 191 N.C.App. 64, 662 S.E.2d 12, 19 (2008)). Whereas telephone calls, letters, e-mails, chat rooms, and facsimiles are easily analyzed as to whether the communication was sent into Florida, the World Wide Web is a more pervasive and complicated communication medium for the purpose of contemplating whether there is a communication into the state.
 

 A brief overview of the nature of the Internet and the World Wide Web is helpful. At the outset, it is important to note that the Internet and the World Wide Web are not synonymous. The Internet is the world’s largest computer network. Christopher W. Meyer, Note,
 
 World Wide Web Advertising: Personal Jurisdiction Around the Whole Wide World?,
 
 54 Wash.
 
 &
 
 Lee L.Rev. 1269, 1275-76 (1997). There are multiple ways to transmit and receive information across the Internet, including e-mails, chat rooms, and the World Wide Web.
 
 See id.
 
 “[T]he Web constitutes the body of information available, and the Internet refers only to the means by which one can access that information.” Todd A. Nist, Note,
 
 Finding the Right Approach: A Constitutional Alternative for Shielding Kids from Harmful Materials Online,
 
 65 Ohio St. L.J. 451, 456 n. 27 (2004). “Individuals commonly access the Internet through a commercial Internet Service
 
 *1211
 
 Provider (ISP) and then use a browser to access resources and information on the World Wide Web.” Lora M. Jennings, Note,
 
 Finding Legal Certainty for E-Commerce: Traditional Personal Jurisdiction and the Scope of the Zippo Sliding Scale,
 
 44 Washburn L.J. 381, 386 (2005) (footnotes and internal quotation marks omitted). The World Wide Web, which “has become one of the most popular and most used Internet programs,” has been further explained as follows:
 

 The World Wide Web consists of a vast number of documents stored in different computers located throughout the world. The technology underlying the World Wide Web created links between individual computers so that documents, audio, and video files can be accessed from anywhere on the Internet. To access information located on the World Wide Web, a user may enter the exact known Internet address of a specific Web page into the browser or use a search engine. Additionally, a user may navigate the World Wide Web by accessing a series of hyperlinks. Because this structure facilitates easy access to information stored throughout the world, the World Wide Web has become one of the most popular and most used Internet programs.
 

 Id.
 

 With the unique context of the Web in mind, we now review the cases that have applied section 48.193(l)(b) in this context. In
 
 Renaissance Health Publ’g, LLC v. Resveratrol Partners, LLC,
 
 982 So.2d 739 (Fla. 4th DCA 2008), a Florida corporation sued the nonresident defendants for trade libel and two related, statutory violations, all arising from statements made on the defendants’ website allegedly disparaging the plaintiff corporation’s products.
 
 Id.
 
 at 740. The complaint alleged that the defendant sold publications about food supplements (both in a traditional paper format and as e-books) and falsely and intentionally disparaged the quality of the plaintiff corporation’s product (a red wine extract).
 
 Id.
 
 at 742. The Fourth District began by referring to its
 
 Becker
 
 decision.
 
 Id.
 
 (citing
 
 Becker,
 
 841 So.2d at 563). The court then held that the statements on the website constituted a tortious act committed in Florida, reasoning that “[t]he defendants’ interactive web site which sells product to Florida residents is akin to the chat room in
 
 Becker.” Id.
 
 Thus, “[a]pplying
 
 Wendt
 
 and
 
 Becker,”
 
 the court held that the plaintiff had alleged sufficient facts to satisfy the Florida long-arm statute.
 
 Id.
 
 The court appeared to focus on the fact that the comments posted in the chat room in
 
 Becker
 
 were “targeted” at Florida residents or people likely to seek medical care in Florida as well as the fact that the website in
 
 Renaissance
 
 was interactive and sold products to Florida residents, presumably reasoning that the website was “targeted” at Florida residents or people likely to purchase the plaintiffs product in Florida.
 

 Although no other Florida courts have addressed this issue, federal district courts interpreting Florida’s long-arm statute have confronted the issue. In
 
 Whitney Information Network, Inc. v. Xcentric Ventures, LLC,
 
 347 F.Supp.2d 1242 (M.D.Fla.2004), the federal district court examined whether the defendant’s website was “passive” or “active” in order to resolve the issue. The difference between a passive website and an active website has been described as follows: “A passive web site only makes information available to those interested in viewing the web site in foreign jurisdictions whereas an active web site allows for those interested in foreign jurisdictions to enter into contracts over the Internet with the defendant.”
 
 Miami Breakers Soccer Club, Inc. v. Women’s
 
 
 *1212
 

 United Soccer Ass’n,
 
 140 F.Supp.2d 1325, 1329 (S.D.Fla.2001).
 

 In
 
 Whitney,
 
 the plaintiffs filed a complaint for,
 
 inter alia,
 
 defamation, alleging that defendants operated a website, www. ripoffreport.com, the purpose of which was to publish consumer complaints, which the defendants actively solicited, and to imply that the company named in the complaint was “ripping off’ consumers. 347 F.Supp.2d at 1243. The defendants also allegedly advertised items for sale and solicited donations from consumers.
 
 Id.
 
 While on the www.ripoffreport.com website, a consumer could click on a link to a second website, www.ripoffrevenge.com, at which defendants sold either a service or do-it-yourself kits.
 
 Id.
 
 The plaintiffs further alleged that the defendants published more than a dozen false stories about them and subjected them to false and defamatory articles.
 
 Id.
 
 at 1243-44.
 

 The federal district court held that the complaint alleged sufficient facts to satisfy section 48.193(l)(b), stating:
 

 While ... Xcentric does not transact any business, have any agents in Florida, or maintain any offices in Florida, this is not determinative under Fla. Stat. § 48.193(l)(b). Its website “www. ripoffreport.com” allows consumers to target an individual state by inviting them to “Pick any state!” for information. The website promises to contact individual consumers with certain information (“We will contact you if a lawsuit is being considered or has been filed which you may want to be a party to”), e-mail victims to contact other victims and attorneys interested in pursuing class action lawsuits, and to put consumers in contact with the media. The website asserts that it has assisted, and continues to assist, many government agencies from around the country, and that many television stations “from all around the country” come to the Ripoff Report for information. The website offers businesses the opportunity to file a rebuttal to any report it publishes. The website ran at least nine reports concerning plaintiffs’ activities in Florida, and specifically solicited information from the named business in a “Rebuttal Box” on the website. The website sold advertising space, and solicited advertisers with reduced rates and a feature which allowed them to “Pick any state!” In an example of its advertising service, the website specifically referred to advertising business in Florida and the presence of reports from Florida.
 

 Id.
 
 at 1244-45 (record references omitted). The court concluded that these facts were sufficient to satisfy the Florida long-arm statute, reasoning that “[t]he activity takes defendants’ conduct beyond a mere passive website, and allows the Court to exercise personal jurisdiction.”
 
 Id.
 
 at 1245 (citing
 
 Toys “R” Us, Inc. v. Step Two, S.A.,
 
 318 F.3d 446 (3rd Cir.2003);
 
 Nw. Healthcare Alliance, Inc. v. Healthgrades.com, Inc.,
 
 50 F. App’x. 339 (9th Cir.2002)).
 

 Other federal district court cases have discussed the issue without an analysis of whether the website was “passive” or “active.” In
 
 Alternate Energy Corp. v. Redstone,
 
 328 F.Supp.2d 1379 (S.D.Fla.2004), the plaintiff, a non-Florida resident, brought suit, alleging claims for libel, slander, defamation, and violations of state law, arising out of information published on the nonresident defendant’s website.
 
 Id.
 
 at 1381. The defendant published an independent Internet website that monitored the hydrogen fuel cell industry.
 
 Id.
 
 Part of the defendant’s website was open to the public, but the remainder was available to subscribers only; the defendant did not sell merchandise through his website, which offered only information.
 
 Id.
 
 According to the complaint, the defendant
 
 *1213
 
 harmed the plaintiff by publishing negative information on the restricted portion of the defendant’s website.
 
 Id.
 
 The defendant sold a small number of the subscriptions to the restricted portion of the website to Florida residents.
 
 Id.
 
 at 1383. The court held that long-arm jurisdiction under 48.193(l)(b) was not proper, finding that “selling subscriptions to an internet site to an unknown, relatively small number of Florida residents, without more, does not ... constitute the commission of a tortious act in Florida under § 48.193(1)(b).”
 
 Alternate Energy Corp.,
 
 328 F.Supp.2d at 1383. The court distinguished the case from
 
 Becker
 
 and
 
 Wendt
 
 because they
 

 involved instances where Florida courts found that personal jurisdiction existed under § 48.193(l)(b). However, the fact that the plaintiffs in both
 
 Becker
 
 and
 
 Wendt
 
 were Florida residents and the defendants had specifically targeted their actions toward the state of Florida factored prominently into the respective courts’ determinations that the out-of-state defendants had allegedly committed tortious acts in Florida. Conversely, in the instant case, Plaintiff is an out-of-state resident, and there is no indication that Defendant’s actions caused more harm to Plaintiff in Florida than anywhere else.
 

 Id.
 
 at 1384 (citations omitted).
 

 In a recent case,
 
 Richards v. Sen,
 
 No. 07-14254-CIV, 2008 WL 4889623 (S.D.Fla. Nov.12, 2008), the federal district court focused only on whether a posting on a website was “an electronic communication accessible to Florida residents,”
 
 id.
 
 at *4, not whether the nonresident defendants intended for the communication to be directed at Florida residents. In that case, the plaintiffs brought suit for,
 
 inter alia,
 
 defamation, slander of title, and injurious falsehood claims.
 
 Id.
 
 The plaintiffs’ claims appeared to be based on the defendants’ filing of a patent application that led to the Patent and Trademark Office’s (PTO) issuance of a patent; the plaintiffs contended that the application tortiously omitted them as inventors or assignees.
 
 Id.
 
 The federal district court stated that “Florida’s long-arm statute enables the exercise of personal jurisdiction over a defendant for defamation, slander and libel claims when the injurious information or material is circulated or published to a third party within the state.”
 
 Id.
 
 Accordingly, the court held that, assuming that the statements were sufficient to support the alleged causes of action, “the PTO’s publication of the [patent] on the internet is sufficient to permit the exercise of personal jurisdiction under the long-arm statute because publication of the allegedly injurious statements and omissions is an electronic communication accessible to Florida residents.”
 
 Id.
 
 (citing § 48.193(1)(b), Fla. Stat.;
 
 Wendt,
 
 822 So.2d at 1253). The court concluded, however, that the exercise of jurisdiction would not comport with due process, because the defendants “did not have fair warning that filing the patent application, which led to the PTO’s subsequent grant of the [patent], would subject them to suit in Florida.... Defendants did not purposely direct any activity towards Florida by filing the [patent] application.”
 
 Id.
 
 at *5.
 

 A review of the relevant case law reveals that courts interpreting Florida law in the context of the Web have applied differing approaches. Some courts appear to have interpreted
 
 Wendt’s
 
 statement that “ ‘committing a tortious act’ in Florida under section 48.193(l)(b) can occur through the nonresident defendant’s telephonic, electronic, or written communications
 
 into
 
 Florida,” 822 So.2d at 1260, as requiring that the defendant
 
 direct
 
 the communications into Florida or otherwise
 
 target
 
 Florida.
 
 Renaissance Health Publ’g, LLC,
 
 982
 
 *1214
 
 So.2d at 740 (interactive website that sells product to Florida residents targeted Florida residents);
 
 see Whitney Info. Network, Inc.,
 
 347 F.Supp.2d at 1245 (defendant’s website was not a mere passive website). At. least- one other court, however, has taken a far more expansive view by holding that merely posting material online “is an electronic communication accessible to Florida residents.”
 
 Richards,
 
 2008 WL 4889623, at *4.
 

 Having reviewed the relevant case law interpreting section 48.193(l)(b), we now turn to an analysis of when a nonresident defendant commits the tortious act of defamation within Florida in the unique context of the Web.
 

 Interpretation of Section 48.193(l)(b) in the Context of the World Wide Web
 

 The operative statutory language is “committing a tortious act within the state.” § 48.193(1)(b). In
 
 Wendt,
 
 this Court interpreted section 48.193(l)(b) to include electronic communication “into” the state. The tortious act that ISC alleges Marshall committed within Florida is defamation, and a review of applicable defamation law as it pertains to personal jurisdiction is helpful. “Publication of defamatory matter is its communication in tentionally or by a negligent act to one other than the person defamed.”
 
 Doe v. Am. Online, Inc.,
 
 783 So.2d 1010, 1016 (Fla.2001) (quoting Restatement (Second) of Tort § 577 (1977)). Under Florida law, the tort of libel is not completed until the statements are published.
 
 See Silver v. Levinson,
 
 648 So.2d 240, 242 (Fla. 4th DCA 1994).
 
 [8]
 
 As explained in
 
 Silver:
 

 [Bjecause the threshold question of personal jurisdiction turns on whether defendant committed an intentional tort in Florida, we must also necessarily review the complaint to determine whether it states a cause of action for libel. If the complaint does not set forth a cause of action for the tort of libel, then assertion of personal jurisdiction predicated on the commission of that specific tort would be improper.
 

 [[Image here]]
 

 Under Florida law, the tort of libel is not completed until the statements are published. In this case, the final element of the tort was not satisfied until the letters were received ... in Florida. Until that time, no tort had been “committed.”
 

 Id.
 
 at 241-42 (citations omitted). Further, the tort of defamation is committed in the place where the defamatory material is published.
 
 Casita, L.P. v. Maplewood Equity Partners, L.P.,
 
 960 So.2d 854, 857 (Fla. 3d DCA 2007) (“A telephonic, electronic, or written communication is deemed ‘published’ in Florida, subjecting the publisher to long-arm jurisdiction under section 48.193(1)(b) of the Florida Statutes if the communication was made into this state by a person outside the state, even if that person has no other contacts with the state.” (citing
 
 Wendt,
 
 822 So.2d at 1258)).
 

 We conclude that allegedly defamatory material about a Florida resident placed on the Web and accessible in Florida constitutes an “electronic communication into Florida” when the material is accessed (or “published”) in Florida. In the context of the World Wide Web, given its pervasiveness, an alleged tortfeasor who posts allegedly defamatory material on a website has
 
 *1215
 
 intentionally made the material almost instantly available everywhere the material is accessible. By posting allegedly defamatory material on the Web about a Florida resident, the poster has directed the communication about a Florida resident to readers worldwide, including potential readers within Florida. When the posting is then accessed by a third party in Florida, the material has been “published” in Florida and the poster has communicated the material “into” Florida, thereby committing the tortious act of defamation within Florida. This interpretation is consistent with the approach taken regarding other forms of communication.
 

 Marshall contends that this Court should apply First Amendment principles to Florida’s long-arm statute in defamation actions and that we should consider issues of fairness when construing the long-arm statute. We decline to do so because we have never construed the first prong of the jurisdictional analysis with a constitutional overlay. As stated previously by this Court, the statutory prong of the jurisdictional analysis “bestows broad jurisdiction on Florida courts. A court can exercise personal jurisdiction,
 
 inter alia,
 
 whenever a foreign corporation commits a ‘tortious act’ on Florida soil.”
 
 Wendt,
 
 822 So.2d at 1257 (quoting
 
 Execu-Tech Bus. Sys., Inc.,
 
 752 So.2d at 584). Issues of due process and fairness are properly considered in the second prong, which “imposes a more restrictive requirement.”
 
 Id.
 
 (quoting
 
 Exe-cur-Tech Bus. Sys., Inc.,
 
 752 So.2d at 584). Further, we decline to make the policy decision that defamation actions should be treated- differently under Florida’s long-arm statute.
 
 [9]
 
 As explained by the U.S. Supreme Court, “the potential chill on protected First Amendment activity stemming from libel and defamation actions is already taken into account in the constitutional limitations on the substantive law governing such suits.”
 
 Calder v. Jones,
 
 465 U.S. 783, 790, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984) (citing
 
 Gertz v. Robert Welch, Inc.,
 
 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974);
 
 N.Y. Times Co. v. Sullivan,
 
 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964)). Thus, “[t]o reintroduce those concerns at the jurisdictional stage would be a form of double counting.”
 
 Id.
 
 Accordingly, we too “reject the suggestion that First Amendment concerns enter into the jurisdictional analysis.”
 
 Id.
 

 This Case
 

 Applying this approach, Marshall’s posting of allegedly defamatory material about a Florida company that was accessible in Florida constitutes committing a tortious act within Florida, provided that the material was accessed — and thus published — in Florida.
 

 Marshall asserts that her acts were completed in the State of Washington and nothing on the website could be published to a Florida computer “unless (and until) the
 
 reader
 
 reached up into Washington and retrieved it.”
 
 [10]
 
 We reject this argu
 
 *1216
 
 ment because it ignores the nature of the Web, which is fundamentally different from a telephone call, an e-mail, or a letter — by posting on her website, Marshall made the material accessible by anyone with Internet access worldwide. Thus, once the allegedly defamatory material is published in Florida, Marshall has committed the tortious act of defamation within Florida for purposes of Florida’s long-arm statute.
 
 [11]
 

 We emphasize that we are only asked to address the first step of the inquiry— whether section 48.193(l)(b) applies to confer personal jurisdiction. The second step is a more restrictive one, precluding suit in any situation where the exercise of jurisdiction over the nonresident defendant would violate due process. This question is not before us in the certified question and we do not deem it necessary to broaden the question in order to address the due process inquiry.
 

 CONCLUSION
 

 For the reasons explained above, we answer the rephrased certified question in the affirmative. A nonresident defendant commits the tortious act of defamation in Florida for purposes of Florida’s long-arm statute when the nonresident makes allegedly defamatory statements about a Florida resident by posting those statements on a website, provided that the website posts containing the statements are accessible in Florida and accessed in Florida. Having answered this question, we return this case to the United States Court of Appeals for the Eleventh Circuit.
 

 It is so ordered.
 

 QUINCE, C.J., and LEWIS, CANADY, POLSTON, LABARGA, and PERRY, JJ., concur.
 

 [1]
 

 . We have jurisdiction because the Eleventh Circuit Court of Appeals certified a question to this Court, which is "determinative of the cause and for which there is no controlling precedent.” Art. V, § 3(b)(6), Fla. Const.
 

 [2]
 

 . The Eleventh Circuit certified the following question to this Court:
 

 DOES POSTING ALLEGEDLY DEFAMATORY STORIES AND COMMENTS ABOUT A COMPANY WITH ITS PRINCIPAL PLACE OF BUSINESS IN FLORIDA ON A NON-COMMERCIAL WEBSITE OWNED AND OPERATED BY A NONRESIDENT WITH NO OTHER. CONNECTIONS TO FLORIDA CONSTITUTE COMMISSION OF A TORTIOUS ACT WITHIN FLORIDA FOR PURPOSES OF . FLA. STAT. § 48.193(l)(b)?
 

 Internet Solutions Corp. v. Marshall,
 
 557 F.3d 1293, 1297 (11th Cir.2009).
 

 [3]
 

 . Section 48.193(l)(b) of Florida's long-arm statute provides:
 

 (1) Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts:
 

 [[Image here]]
 

 (b) Committing a tortious act within this state.
 

 § 48.193(1)(b), Fla. Stat. (2007).
 

 [4]
 

 . "Phishing” is "a scam by which an e-mail user is duped into revealing personal or confidential information which the scammer can use illicitly.” Merriam-Webster Online, http://www.merriam-webster.com/dictionaiy/ phishing (last visited June 3, 2010).
 

 [5]
 

 . Specifically, Marshall stated the following: she had been a resident of Washington since 2000, she had never been a resident of Florida, she had never owned or leased any real estate in Florida, she had no bank accounts or investments in Florida, and she had only visited Florida once — a three-day work-related trip in 2004 that was unconnected with her website. She also declared the following: she was the owner and host of the website from her home in Washington, had never sold any products or services in connection with the website, had never placed any advertisements on the website, had never solicited or received any business, advertising, or donations within Florida in connection with the website, had never contracted with an Internet service provider located within Florida, had never provided a capability on the website to distinguish or target Florida individuals or companies, had never received any income or compensation in connection with the website, and had never directed any communication (telephonic or written) into Florida for business purposes in connection with the website.
 

 [6]
 

 . We do not decide the broader issue of whether injury alone satisfies the requirement of section 48.193(1)(b). We do recognize that the federal courts have adopted this broad construction of section 48.193(1)(b), holding that the commission of a tortious act out of state that causes an injury to an in-state resident satisfies Florida’s longarm statute.
 
 See, e.g., Licciardello v. Lovelady,
 
 544 F.3d 1280, 1283 (11th Cir.2008);
 
 Posner v. Essex Ins. Co.,
 
 178 F.3d 1209, 1216-17 (11th Cir.1999). However, we note that in certifying the question to this Court, the Eleventh Circuit did not mention this broad construction of the long-arm statute in its opinion and did not ask us to consider it, and, accordingly, we limit our analysis to the question asked.
 

 [7]
 

 . Justice Wells, in his dissent, stated, “It does not appear that the defendant initiated the call into Florida.”
 
 Id.
 
 at 677.
 

 [8]
 

 . The elements of a claim for defamation are as follows: "(1) publication; (2) falsity; (3) actor must act with knowledge or reckless disregard as to the falsity on a matter concerning a public official, or at least negligently on a matter concerning a private person; (4) actual damages; and (5) statement must be defamatory.”
 
 Jews for Jesus, Inc. v. Rapp, 997
 
 So.2d
 
 1098, 1106
 
 (Fla.2008).
 

 [9]
 

 . Marshall notes that New York's long-arm statute specifically exempts defamation actions. N.Y. C.P.L.R. § 302(a)(2) (McKinney 2001 & Supp.2009) ("As to a cause of action arising from- any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent: ... commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act....”). Florida's long-arm statute, however, does not include a similar exemption. Florida courts have applied section 48.193(1)(b) to defamation causes of action, and the Legislature has not amended the statute to include a defamation exemption or afford special treatment for defamation claims.
 

 [10]
 

 . Under Marshall’s view, even a website posting that is directed at Florida or targets Florida is still not sent "into” Florida or anywhere in particular.
 

 [11]
 

 . We note that the issues of whether Marshall targeted a Florida resident, whether Marshall purposefully directed her post at Florida, or whether Marshall's website is "active” or "passive” could be properly considered in the due process analysis.