[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 08-12328

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 27, 2010
JOHN LEY
CLERK

D. C. Docket No. 07-01740-CV-ORL-22-KRS

INTERNET SOLUTIONS CORPORATION,

                                                        Plaintiff-Appellant,

versus

TABATHA MARSHALL,

                                                        Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(July 27, 2010)

Before BIRCH and BARKETT, Circuit Judges and KORMAN[*], District Judge.

PER CURIAM:

    This case returns to us for disposition from the Supreme Court of Florida, to

_____

    [*] Honorable Edward R. Korman, United States District Judge for the Eastern District of New York, sitting by designation.

which we certified a question of Florida state law.  See Internet Solutions Corp. v. Marshall, 557 F.3d 1293, 1296-97 (11ᵗʰ Cir. 2009) ("Internet Solutions I").  Based on the Florida Supreme Court's response to the certified question, Internet Solutions Corp. v. Marshall, _ So. 3d _, 2010 WL 2400390 (Fla. 2010) (No. SC09-272) ("Internet Solutions II"), we REVERSE the district court's dismissal and REMAND for further proceedings consistent with this opinion.

## I.  BACKGROUND

The facts of the case are fully described in our previous opinion, Internet Solutions I, 557 F.3d at 1294-95, and we will recount only the facts relevant to our disposition of the case.

Plaintiff-appellant Internet Solutions Corporation ("ISC") is a Nevada corporation operating a number of internet websites relating to employment recruiting and internet advertising.  ISC's principal place of business is in Orlando, Florida.  Defendant-appellee Tabatha Marshall is a Washington resident and owns and operates a website, http://www.tabathamarshall.com, which posts consumer-related information about different companies.  Third parties can comment on all of Marshall's entries, and these comments appear on the same webpage as Marshall's original post.  In August 2007, Marshall posted information about VeriResume, one of ISC's websites, "entitled 'Something's VeriRotten with

2

VeriResume . . . .'" <u>Internet Solutions II</u>, __ So. 3d at __, 2010 WL 2400390 at *1. The post included a listing of VeriResume's affiliates, including ISC, and included Florida addresses. R1-1, Exh. A at 7-9. Third parties posted comments on this post, and Marshall responded to some of them. <u>Id.</u> at 9-13. Several of the commenters appeared to have Florida addresses ("Mrs. C near Orlando, FL,", "Suzanne C-Orlando, FL," and "anonymous–Orlando, FL"). <u>Id.</u> at 12-13; <u>Internet Solutions II</u>, __ at __, 2010 WL 2400390 at *1.

ISC filed a diversity action against Marshall claiming defamation, trade libel, and injurious falsehood, and seeking injunctive relief. It asserted that jurisdiction was proper in Florida because Marshall had entered Florida to commit a tortious act. Marshall moved to dismiss the complaint for lack of jurisdiction and argued that the court lacked personal jurisdiction over her under Florida's long-arm statute, Fla. Stat. § 48.193, because she did not have sufficient contacts in Florida and had not committed a tortious act in the state. She also asserted that the exercise of jurisdiction would violate federal due process.

The district court granted Marshall's motion to dismiss based on lack of personal jurisdiction. It found that the exercise of personal jurisdiction was appropriate because ISC had made out a <u>prima</u> <u>facie</u> case for jurisdiction which Marshall had failed to rebut. It then decided, however, that Marshall's assertion

3

adequately rebutted ISC's prima facie jurisdictional showing and that ISC failed to contradict Marshall's argument that she lacked the requisite minimum contacts to overcome a violation of federal due process. ISC appealed.

## II. DISCUSSION

Under our two-step inquiry for determining whether the exercise of personal jurisdiction over a non-resident was proper, we noted that Florida's long-arm statute, Fla. Stat. § 48.193(1)(b), permitted the exercise of jurisdiction over actions arising out of tortious acts committed within Florida. Internet Solutions I, 557 F.3d at 1296. We recognized that the defendant was not required to be within the state for the tortious act to occur within the state because a cause of action could arise from an act through the nonresident defendant's electronic, telephonic or written communication into Florida. Id. (citing Wendt v. Horowitz, 822 So.2d 1252, 1260 (Fla. 2002)). Because Florida law was unsettled as to whether Marshall's actions in posting an allegedly defamatory comment on her website constituted an electronic communications "into Florida," we certified a question to the Florida Supreme Court:

> DOES POSTING ALLEGEDLY DEFAMATORY STORIES AND
> COMMENTS ABOUT A COMPANY WITH ITS PRINCIPAL
> PLACE OF BUSINESS IN FLORIDA ON A NON-COMMERCIAL
> WEBSITE OWNED AND OPERATED BY A NONRESIDENT
> WITH NO OTHER CONNECTIONS TO FLORIDA CONSTITUTE
> COMMISSION OF A TORTIOUS ACT WITHIN FLORIDA FOR

4

PURPOSES OF FLA. STAT. § 48.193(1)(b).

Id. at 1296-97.

The Florida Supreme Court rephrased our question as follows:

DOES A NONRESIDENT COMMIT A TORTIOUS ACT WITHIN
FLORIDA FOR PURPOSES OF SECTION 48.193(1)(b) WHEN HE
OR SHE MAKES ALLEGEDLY DEFAMATORY STATEMENTS
ABOUT A COMPANY WITH ITS PRINCIPLE PLACE OF
BUSINESS IN FLORIDA BY POSTING THOSE STATEMENTS
ON A WEBSITE, WHERE THE WEBSITE POSTS ARE
ACCESSIBLE AND ACCESSED IN FLORIDA?

Internet Solutions II, __ So. 3d at __, 2010 WL 2400390 at *1 . After considering

the issue, the Florida Supreme Court answered the question in the affirmative. See

id. at __, 2010 WL 2400390 at *1, 14. It concluded that, although the posting of

defamatory material about a Florida resident on a website alone did not constitute

the commission of a tortious act under § 48.193(1)(b), the posting of such that was

both *accessible* in Florida and *accessed* in Florida constituted the commission of a

tortious act of defamation within Florida under § 48.193(1)(b). Id. at __, 2010 WL

2400390 at *1, 12, 14. Specifically, it concluded that the posting of "allegedly

defamatory material about a Florida resident placed on the [World Wide] Web and

accessible in Florida constitutes an 'electronic communication into Florida' when

the material is accessed (or 'published') in Florida." Id. at __, 2010 WL 2400390 at

*4, 12, 14. The Florida Supreme Court held, therefore, that "Marshall's posting of

5

allegedly defamatory material about [ISC] that was accessible in Florida constitutes committing a tortious act within Florida, provided that the material was accessed–and thus published–in Florida." Id. at _, 2010 WL 2400390 at *13.

## III. CONCLUSION

Because the Florida Supreme Court concluded that Marshall committed a tortious act in Florida by posting allegedly defamatory material about ISC that was accessible in Florida when the material was then accessed and thus published in Florida, she is accordingly subject to the Florida long-arm statute. We therefore REVERSE the district court's dismissal of ISC's claim and REMAND for further proceedings consistent with this opinion.[1]

---

[1] Consistent with the Florida Supreme Court's observations, we note that we have only addressed the first step to the inquiry as to whether the exercise of personal jurisdiction over a none-resident defendant is proper. See Internet Solutions II, _ So. 3d at _, 2010 WL 2400390 at *13. As the Florida Supreme Court observed, "the issues of whether Marshall targeted a Florida resident, . . . purposefully directed her post at Florida, or whether her website is 'active' or 'passive' could be properly considered" in the "more restrictive" second step determination of whether "the exercise of jurisdiction over the nonresident defendant would violate due process." Id. at _ n.11, 2010 WL 2400390 at *13, n.11.